## HERSH *v.* KENTFIELD BUILDERS, INC.

1. MASTER AND SERVANT—INTENTIONAL TORTS OF EMPLOYEE—LIABILITY OF EMPLOYER.

   An employer is not liable for the intentional torts of his employees which are committed beyond the scope of the employer's business.

2. MASTER AND SERVANT—INTENTIONAL TORTS OF EMPLOYEE—LIABILITY OF EMPLOYER.

   Defendant employer cannot be found liable nor at fault for employee's assault on an invitee to employer's premises on the ground of negligence in hiring a person with a criminal record and possible violent propensities where the record reveals that the assault was outside the scope of employment, the employer knew of the criminal record but had no reason to suspect violent tendencies, the employee's work did not involve public contact, the employee was a good worker, and there was no reason to inquire into his record, and where, even if the employer had checked the record, he would not have found any criminal activities for the preceding 10 years.

Appeal from Oakland, Frederick C. Ziem, J. Submitted Division 2 April 4, 1969, at Lansing. (Docket No. 5,181.) Decided August 27, 1969. Rehearing denied October 17, 1969. Application for leave to appeal filed November 5, 1969.

Complaint by Melvin R. Hersh and Beverly Hersh against Kentfield Builders, Inc., a Michigan corporation, and Sam Steel Custom Builders, a

REFERENCE FOR POINTS IN HEADNOTES

[1, 2] 35 Am Jur, Master and Servant § 573 *et seq.*

Michigan corporation, for injuries sustained when plaintiff was assaulted by defendants' employee. Verdict and judgment for plaintiff Melvin R. Hersh against defendant Kentfield Builders. Defendant appeals. Reversed.

*Samuel H. Rubin,* for plaintiff.

*Patterson & Patterson, Barett, Whitfield, Manikoff & White (William P. Whitfield* and *Robert G. Wadell,* of counsel), for defendant Kentfield Builders.

Before: J. H. Gillis, P. J., and Levin and Bronson, JJ.

Bronson, J. In the course of his business as a salesman of kitchen cabinets, plaintiff Melvin Hersh arranged a meeting with the president of corporate defendant Kentfield Builders, Inc. This meeting was to take place in one of the model homes Kentfield Builders, Inc. was then erecting. While Melvin Hersh was waiting in a model home he was, without provocation of any kind, assaulted by Benton Hutchinson with a linoleum knife and most seriously injured. Hutchinson was an employee of defendant Kentfield Builders, Inc.

Plaintiffs sued defendants on the ground that defendants were negligent in hiring a man with violent propensities. Defendant Sam Steel Custom Builders was granted a directed verdict since it had neither hired nor employed Hutchinson. Plaintiff Beverly Hersh was found to have no cause of action. From judgment following a jury verdict rendered in favor of plaintiff Melvin Hersh in the amount of $25,000, defendant Kentfield Builders, Inc. appeals.

Defendant raises only one issue on appeal:

"Could the jury find defendant, Kentfield Builders Inc., negligent in employing Benton Hutchinson to clean one of its model homes when an investigation would have revealed a conviction for manslaughter and one for carrying a concealed weapon? In other words was defendant responsible for Benton Hutchinson's attack, admittedly outside the scope of his employment, on plaintiff, while plaintiff waited in one of the model homes to see defendant's president about the possibility of installing kitchen cabinets in the homes defendant was building?"

. At trial it was adduced that Hutchinson had a criminal record and that defendant in all probability was aware in a casual way of some prior criminal offense by Hutchinson; that Hutchinson occasionally had been drunk on the job; and that at times he had been belligerent.[1] Defendant moved for a directed verdict on the ground that there was, as a matter of law, no negligence in hiring a man with a prison record to clean up model homes not open to the public. The trial judge felt that although a close question was presented, it should be submitted to the jury. The jury returned a verdict for plaintiff.

Both plaintiff and defendant cite many cases in furtherance of their respective positions. Defendant argues, on the one hand, that if this Court rules that there was a proper jury question, it may well place an onerous burden on those employers recruiting workers amongst the hard-core unemployed. Plaintiff urges, on the other hand, that there is a long-standing tradition in the courts that questions of negligence are best decided by a jury and not by judges.

---

[1] Ten years prior to his attack on Hersh, Hutchinson had been convicted of manslaughter; he also had a conviction for carrying a concealed weapon. The record discloses that although his employer was not aware of these specific convictions, Hutchinson had once mentioned that he had been in jail on "a bum rap".

A search of the record does not on its face show any matters that would reveal Hutchinson's vicious propensities. To affirm would be tantamount to declaring, as defendant states in its brief:

"[I]f you hire two people, identical except that one has a criminal record, and both attack and injure another outside of the scope of their employment, you cannot be held liable for the acts of the one without the criminal record, but you may be held liable for the acts of the one with the criminal record * * * ."

It appears from the record that Hutchinson had been hired in a capacity not usually connected with meeting the public. He was to clean the model homes and do odd tasks about the construction site. Hutchinson was not a full-time employee of defendant. He would call in several times a week to see if there was any work for him. According to testimony, the tasks Hutchinson did are often allotted to "pick-up" workers. These are laborers who congregate at certain locales and are "picked up" at random for manual labor. Defendant originally "picked up" Hutchinson through just such a random selection. Thereafter Hutchinson was given continued preference since he proved to be an above-average worker.

Upon the record there appears to be no reason for defendant to have made inquiry into Hutchinson's past record. Indeed, had such an inquiry been made it is doubtful that defendant could have found anything in the past decade (since Hutchinson's conviction for manslaughter) which would have evidenced a propensity for vicious acts. Although we cannot say that a criminal record is not a factor pointing to certain aspects of a person's character, in light of the type of labor required to be done we cannot legally condemn defendant for hiring

Hutchinson. This is not an instance of *respondeat superior*. No one claims the assault was connected in any way with the scope of Hutchinson's employment. Under the circumstances we cannot say that there was, upon the record, evidence sufficient to let the question go to the jury. As was stated in *Bradley* v. *Stevens* (1951), 329 Mich 556, 562:

"A review of the record requires concurrence with the following conclusions reached by the trial judge. He said in part:

" 'If Stevens is held liable, it is on the principle of law quoted, that he is guilty of negligence because of his failure to investigate and learn the character and reputation of Yeo. The burden of proof is upon the plaintiff to establish such negligence by a fair preponderance of the evidence.' "

The relatively new and often discussed concept that the innocent victim of a criminal wrong has a moral right to compensation has not as yet been acted upon in the State of Michigan. Such a system of compensation for those who have been the victims of violent crime was adopted in England in 1964, in legislation known as the Criminal Injuries Compensation Scheme.[2] That legislation provided for victims of the type of violent crime that is here involved, to receive compensation out of public money calculated, subject to minor modification, on the basis of damages at common law. The plaintiff-victim Melvin Hersh has sustained a grievous wrong. And under our interpretation and application of existing tort law, our decision leaves Melvin Hersh uncompensated—a glaring instance, we think, of the inadequacy of the "fault" doctrine as a criterion of compensability.

[2] H. C. Deb. 5th series, Vol. 657, cols. 89 *et seq.* (written answers, 24 June 1964).

To sustain a finding of negligent hiring in the present case, one would have to look first to the attack and then back at the trial record. It is apparent from that record that Hutchinson's manner did not reveal an assaultive propensity and that his employer, who was without knowledge of the prior conviction for manslaughter, cannot be said to have acted unreasonably in hiring him as to fix "fault" on the employer.

Reversed. No costs.

LEVIN, J., concurred.

J. H. GILLIS, P. J., concurred in the result.