117 N.J. Super. 439 (1971)
285 A.2d 59
MIRIAM BENNETT AND CHARLES BENNETT, PLAINTIFFS-RESPONDENTS,
v.
T & F DISTRIBUTING CO., OTHERWISE KNOWN AS KIRBY SALES & SERVICE, INC., DEFENDANT-APPELLANT, AND KIRBY VACUUM CORP., THE CITY OF NEPTUNE AND THE SCOTT AND FETZER CO., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 29, 1971.
Decided December 16, 1971.
*440 Before Judges COLLESTER, MINTZ and LYNCH.
Mr. Philip G. Auerbach argued the cause for respondents Miriam Bennett and Charles Bennett (Messrs. Drazin, Warshaw, Auerbach & Rudnick, attorneys; Mr. Robert T. Winter on the brief).
*441 Mr. Robert M. Graham argued the cause for appellant (Messrs. Champi, Graham & Yurasko, attorneys).
Mr. Thomas F. Heaney, Jr. argued the cause for respondent City of Neptune (Messrs. Carton, Nary, Witt & Arvanitis, attorneys).
Mr. Paul X. McMenaman argued the cause for respondent Scott and Fetzer Co.
The opinion of the court was delivered by LYNCH, J.A.D.
This is an appeal, leave having been granted, by defendant T & F Distributing Co. (T & F), a distributor of vacuum cleaners, from the denial of its motion for summary judgment. In this suit T & F is charged with negligence in having selected one Watson to sell its vacuum cleaners when it should have known that he had vicious propensities. In the course of his contact with plaintiff Miriam Bennett, to whom he had sold a vacuum cleaner at her home in Neptune City, he committed an atrocious assault and battery upon her. She sues for damages for the serious injuries she sustained. Her husband sues per quod. Watson is currently serving a 7-10-year sentence in the State Prison for the crime thus committed.
On September 11, 1968 Roy Watson signed what is labeled an "independent Dealer's Contract" with T & F, wherein Watson, as "dealer," agreed to buy vacuum cleaners from T & F and to sell them at retail. It is not necessary to set forth the details of the contract but it is apparent that every effort was therein made to establish that Watson was an "independent dealer" and not an employee of T & F. Suffice it to say that such questions (agency vel non) scarcely can be decided as a matter of law, but usually are questions for the fact finder, considering all elements relevant to the proper status. Cf. Miklos v. Liberty Coach Co., 48 N.J. Super. 591, 602 (App. Div. 1958).
*442 The allegation of the complaint is that T & F was negligent "in hiring, entering into an arrangement, or permitting the said Roy E. Watson, otherwise known as Leroy Turner, to be placed in a position where he could make sales on a door-to-door basis when they know, or should have known, of his vicious propensities and his prior criminal record."[1] If Watson had been acting within the scope of employment when he assaulted Mrs. Bennett, it would be immaterial whether T & F was negligent in hiring Watson, for in such instance T & F would be liable on the theory of respondeat superior. In 53 Am. Jur.2d Master and Servant, § 422 at 437, it is said:
The application of the theory of independent negligence in hiring or retaining an employee becomes important in cases where the act of the employee either was not, or may not have been, within the scope of his employment. In these cases such application allows the injured person to establish liability on the part of the master where no liability would otherwise exist. For this reason a great many of the cases holding the theory applicable involve assaults.
Thus we here approach the issue as to whether T & F can be held liable for negligence in selecting Watson to sell its vacuum cleaners and whether the denial of summary judgment as to T & F was proper.
Prior to signing the contract Watson had filled out an application for the so-called "dealership." He gave the names of two former employers and listed two references. T & F's president testified on deposition that he had telephoned the two employers and each advised that Watson was reliable and responsible. His recollection as to the references was somewhat hazy but he "believed" he had called them and he was "satisfied." No other inquiry was made.
The fact was that Watson had a rather extensive criminal record. However, in all but one instance the record was under *443 an alias of Leroy Turner. Under the latter name he had been convicted of larceny of automobiles, assault and battery, malicious mischief, of being a disorderly person, and also he had been arrested and charged with possession of stolen property. On March 17, 1968, about 5 1/2 months before his employment with T & F and about 6 1/2 months before the Bennett episode, he had been arrested on a charge of assault with a deadly weapon. The F.B.I. record on this charge entered the arrest under the names of both Leroy Turner and Roy Watson.
The court below denied T & F's motion for summary judgment on the ground that there were "factual questions to be decided as to the relationship between T & F, the defendant in this case, and Watson."
At oral argument we were advised that in Neptune City, where Watson solicited Mrs. Bennett's patronage, there was an ordinance which required that all "peddlers" such as Watson be licensed. We are further advised that it is the practice to obtain fingerprints of the licensee, though the ordinance does not, by its terms, require it. Watson was not licensed. There is thus raised the question as to whether T & F had a duty to see to it that Watson was licensed and, if so, whether fingerprints would have served to reveal the criminal record of Watson (or Leroy Turner).
We do not here undertake to decide the extent of the duty, if any, of defendant T & F to investigate Watson's previous background or propensities, but, for reasons now to be stated, we confine ourselves to determining whether denial of summary judgment as to T & F was proper.
This case calls for pronouncement of new law in this State in that it is sought to hold an "employer" (T & F) liable for the actions of its "agent" or "independent contractor" (whichever it may be), on the theory that T & F should have known of the vicious propensities of Watson and was guilty of negligence in selecting him to sell its wares. The principle suggested by plaintiffs is not without precedent outside of New Jersey. See Restatement, Agency, 2d, § 213, *444 comment (d) (1958); Restatement, Torts 2d, § 302 B, comment (e), ex. (D), § 307, comment (a), illus. 1; § 308 (1965), and Annotation, "Liability of employer, other than carrier, for a personal assault upon customer, patron or other invitee." 34 A.L.R.2d 372 (1954). It was recognized in the cases of Fleming v. Bronfin, 104 A.2d 407 (D.C. Mun. Ct. App. 1954); Bradley v. Stevens, 329 Mich. 556, 46 N.W.2d 382 (Sup. Ct. 1951), 34 A.L.R.2d 367 (1954), and Hersh v. Kentfield Builders, Inc., 19 Mich. App. 43, 172 N.W.2d 56 (Ct. App. 1969). However, in Fleming and in Hersh it was held that there was not sufficient evidence of negligence in the hiring of the "vicious" employee involved to warrant submission of the case to the jury. In Bradley v. Stevens, supra, a verdict of "no cause for action" in favor of defendant employer of an employee who had attacked a patron in a gasoline station was affirmed.
We note that the foregoing authorities are in the context of an agency relationship and not that of an independent contractor. However, exceptions to the rule as to independent contractors (nonliability of one who hires an independent contractor for the latter's negligence) have been created where the hiring party engages an incompetent contractor. It has even been suggested that the contractee should be liable for his independent contractor's financial irresponsibility. See Majestic Realty Associates, Inc. v. Toti Contracting Co., 30 N.J. 425 (1959). There the court bespoke the policy considerations which, arguably, might extend liability in such instance:
Inevitably the mind turns to the fact that the injured third party is entirely innocent and that the occasion for his injury arises out of the desire of the contractee to have certain activities performed. The injured has no control over or relation with the contractor. The contractee, true, has no control over the doing of the work and in that sense is also innocent of the wrongdoing; but he does have the power of selection and in the application of concepts of distributive justice perhaps much can be said for the view that a loss arising out of the tortious conduct of a financially irresponsible contractor should fall on the contractee. [at 432-433]
*445 The same considerations may call for liability here where a customer, such as Mrs. Bennett, entirely innocent, is injured by one selected by the contractee T & F to sell its vacuum cleaners to housewives such as she.
There are conflicting interests to be considered in the adoption of a proper rule in this context. The protection of innocent third persons is a major interest in favor of adoption of a rule imposing a duty of reasonable care in the selection of employees or independent contractors who may have vicious propensities. Such a rule may induce a distributor such as T & F or others similarly situated to be more careful in selecting one to act for them in contact with members of the public such as prospective customers. "This is a duty which arises in all cases where an agent is employed, and no harm can come from stimulating its exercise in the employment of an independent contractor, where the rights of others are concerned." Covington & Cincinnati Bridge Co. v. Steinbrock, 61 Ohio St. 215, 55 N.E. 618, 621 (Sup. Ct. 1899), quoted with approval in Majestic Realty Associates, Inc., supra, 30 N.J. at 440.
There are countervailing policies which may preclude such liability, e.g., the possibility that employers will not employ those who may have had vicious episodes in the past but who have been rehabilitated, or, that such imposition of liability might impose a heavy burden on those employers recruiting workers from among the hard-core unemployed. Cf. Hersh v. Kentfield Builders, Inc., supra, 172 N.W.2d at 57.
In any event, important policy considerations are involved here not only with respect to protection of innocent victims, but also to definition of the duty, if any, of employers of all types of employees  salesmen, service people, insurance agents, and countless others  to investigate their backgrounds, and the extent to which they should go in such investigations.
In Jackson v. Muhlenberg Hospital, 53 N.J. 138, 142 (1969), we are reminded that where a case generates an important *446 issue involving highly significant policy considerations and where the ruling sought would reach far beyond the particular case, "maximum caution" must be exercised before granting summary judgment. That is the nature of the ruling sought here. The issue should not be resolved until a full record is developed at trial. Cf. Anderson v. Sills, 56 N.J. 210, 215 (1970).
For these reasons, the denial of summary judgment is affirmed.
NOTES
[1] We note the narrow ground (italicized by us) by which plaintiffs attribute liability to T & F, and that it is not alleged that Watson was an agent of T & F who committed the tort while acting within the scope of his authority.