Sun Min LEE, as Administratrix for the ESTATE OF Kyung Min LEE, Plaintiff,

v.

J.B. HUNT TRANSPORT, INC., Zachery N. Jackson, and Mohamed M. Tlili, Defendants.

No. 01 Civ. 9523(LBS).

United States District Court, S.D. New York.

March 11, 2004.

Harvey A. Sackstein, Scott T. Ackerman, Sackstein Sackstein & Sackstein, Esqs., Garden City, NY, for Plaintiff.

Cynthia M. Certo, Rawle & Henderson, LLP, New York City, for Defendants.

## MEMORANDUM AND ORDER

SAND, District Judge.

Plaintiff Sun Min Lee ("Plaintiff") brings this negligence action seeking damages for the wrongful death of her decedent, Kyung Min Lee ("Lee"), against Defendants J.B. Hunt Transport, Inc. ("J.B. Hunt"), Zachery N. Jackson ("Jackson"), and Mohamed M. Tlili ("Tlili"). Plaintiff also asserts a claim against J.B. Hunt for the negligent hiring, training, supervision, and retention of employees, including Jackson. It is on that claim that Defendants J.B. Hunt and Jackson ("Defendants") now move for partial summary judgment. For the reasons set forth below, the motion is granted and the claim is dismissed.

## I. Background

This case arises from a vehicular accident that occurred on the New Jersey Turnpike on July 26, 2000. Plaintiff's decedent, Lee, was in the front passenger seat of Tlili's car when it was allegedly run over by a tractor-trailer truck owned by J.B. Hunt and operated by its employee, Jackson. Driving conditions at that time included heavy rain and reduced visibility.

Plaintiff brought the instant negligence action against Tlili, Jackson, and J.B. Hunt (under the theory of *respondeat superior*), seeking monetary damages for Lee's wrongful death. Plaintiff later amended the complaint to include a cause of action against J.B. Hunt for negligent hiring, training, supervision, and retention of Jackson.

Defendants J.B. Hunt and Jackson moved for partial summary judgment on that cause of action, as well as on any claim for punitive damages. Plaintiff subsequently withdrew her cause of action for punitive damages. As such, the motion currently relates only to Plaintiff's claim regarding J.B. Hunt's hiring, training, supervision, and retention of Jackson.

## II. Discussion

### A. Standard of Review

A motion for summary judgment will be granted only if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 330, 106 S.Ct. 2548. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Nonetheless, "[c]onclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir.2003) (internal quotation marks and citation omitted).

### B. Tort of Negligent Hiring, Training, Supervision and Retention

Plaintiff alleges that J.B. Hunt negligently hired and retained Jackson, whose

license was restricted to work-related driving over a one-year period following an arrest (and, according to Plaintiff, conviction) for driving under the influence in 1989. In addition, Plaintiff asserts that it is unclear whether Jackson ever received training from J.B. Hunt regarding driving on wet road surfaces and driver fatigue.

Defendants J.B. Hunt and Jackson argue that Plaintiff should not be permitted to proceed on her claim of negligent hiring, training, supervision, and retention because Defendants have admitted that Jackson was acting within the course and scope of his employment when the accident occurred. Under the doctrine of *respondeat superior*, that admission renders J.B. Hunt liable to Plaintiff for any negligent acts committed by Jackson with respect to the accident in question. As a result, Defendants contend, "evidence of negligent hiring and training can serve no useful purpose except to influence the jury." (Defendants' Memorandum of Law in Support of Motion for Partial Summary Judgment, at 9) (citation omitted).

In their original moving papers, Defendants relied on New York tort law as support for their position. Plaintiff, however, insists that, under New York's choice-of-law principles, New Jersey's substantive law should govern this case.[1] In reply, Defendants—who have not briefed the choice-of-law issue—maintain that such an analysis is unnecessary because neither the courts of New York nor the courts of New Jersey would allow Plaintiff to pursue her claim of negligent hiring, training, supervision and retention. We agree.

■ Under New York law, claims for negligent hiring, supervision or retention are generally not permitted when the agency relationship necessary for *respondeat superior* is established. In *Karoon v. New York City Transit Authority*, 241 A.D.2d 323, 659 N.Y.S.2d 27 (1st Dep't 1997), the Supreme Court, Appellate Division (First Department) held that:

> Generally, where an employee is acting within the scope of his or her employment, thereby rendering the employer liable for any damages caused by the employee's negligence under a theory of respondeat superior, no claim may proceed against the employer for negligent hiring or retention. This is because if the employee was not negligent, there is no basis for imposing liability on the employer, and if the employee was negligent, the employer must pay for the judgment regardless of the reasonableness of the hiring or retention or the adequacy of the training.

*Id.* at 29 (internal citations omitted); *see also Rossetti v. Board of Education*, 277 A.D.2d 668, 716 N.Y.S.2d 460, 461–62 (3d Dep't 2000) (affirming dismissal of cause of action for negligent hiring and retention of personal care aide because school district admitted that aide was acting within the

---

1. Plaintiff relies on the New York Court of Appeals' decision in *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972). In *Neumeier*, the court outlined three general principles "for situations involving guest statutes in conflicts settings." *Id.* at 128, 335 N.Y.S.2d 64, 286 N.E.2d 454: Plaintiff argues that the third principle recognized by the *Neumeier* court applies to this case. Under that principle: "[W]hen the passenger and the driver are domiciled in different states, .... [n]ormally, the applicable rule of decision will be that of the state where the accident occurred but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants." *Id.* Here, Plaintiff's decedent, a domiciliary of New York, was a guest passenger in a car driven by Tlili, a domiciliary of Pennsylvania. Because these parties were domiciled in different states, Plaintiff argues that this Court should apply the law of the state where the accident occurred (New Jersey).

scope of her employment at the time the alleged injuries occurred); *Murns v. City of New York,* 2001 WL 515201, at *5 (S.D.N.Y. May 15, 2001) (applying New York law to dismiss plaintiff's claims for negligent hiring and supervision). Indeed, a majority of the states that have considered the issue follow a similar rule. *See e.g., McHaffie v. Bunch,* 891 S.W.2d 822, 826–27 (Mo.1995) ("Assuming the evidence supported a claim of negligent entrustment or negligent hiring, such evidence was unnecessary because vicarious liability had already been established under the theory of *respondeat superior* under which the employer is strictly liable for all fault attributed to the negligent employee."); *Hackett v. Washington Metropolitan Area Transit Authority,* 736 F.Supp. 8, 11 (D.D.C.1990) ("Hackett's negligent hiring, supervision and retention claim, which does not impose any additional liability, would be prejudicial and unnecessary and should be dismissed."); *Houlihan v. McCall,* 197 Md. 130, 78 A.2d 661, 665 (1951) ("[W]hen agency had been admitted it was quite unnecessary to pursue the alternative theory in order to hold the corporate defendant. It was only necessary to prove negligence on the part of the driver."). *But see Marquis v. State Farm Fire and Casualty Co.,* 265 Kan. 317, 961 P.2d 1213, 1224 (1998) (adopting minority rule).

■ In contrast, Plaintiff argues, New Jersey law would permit her to proceed on both claims, because it recognizes a cause of action for negligent hiring, training, supervision and retention "separate and distinct" from that of *respondeat superior.* (Plaintiff's Memorandum of Law in Opposition to Motion for Partial Summary Judgment, at 4) (citing *DiCosala v. Kay,* 91 N.J. 159, 172, 450 A.2d 508 (1982)).

The Court disagrees. Although New Jersey has indeed recognized the tort of negligent hiring/retention, its rationale for doing so appears to rest upon a "concern for the safety and welfare of the general public, and the need to assess liability for the vicious acts of employees, *in the absence of respondeat superior liability.*" 18 N.J. Prac. *Employment Law* § 12.34 (West 1998) (emphasis added). Thus, where an employer has admitted that the employee acted within the course and scope of employment, evidence of negligent hiring, training, supervision or retention becomes unnecessary, irrelevant and prejudicial.

In *Bennett v. T & F Distrib. Co.,* 117 N.J.Super. 439, 285 A.2d 59 (1971), *cert. denied,* 60 N.J. 350, 289 A.2d 795 (1972), the Appellate Division of New Jersey's Superior Court considered whether an employer could be held liable for an assault committed by one of its agents or contractors against a customer at her home. There, the plaintiff rested her claim of liability on allegations that the employer knew or should have known that the agent or contractor had "vicious propensities." *Id.* at 60. The court noted that the act clearly fell outside the scope of employment, observing: "If Watson had been acting within the scope of employment when he assaulted Mrs. Bennett, it would be immaterial whether T & F was negligent in hiring Watson, for in such instance T & F would be liable on the theory of Respondeat superior." *Id.* The court relied on the following passage from 53 Am.Jur.2d *Master and Servant* § 422 (1970):

The application of the theory of independent negligence in hiring or retaining an employee becomes important in cases where the act of the employee either was not, or may not have been, within the scope of his employment. In these cases such application allows the injured person to establish liability on the part of the master *where no liability would otherwise exist.* For this reason a great

many of the cases holding the theory applicable involve assaults.

*Id.* at 62 (emphasis added).

The court ultimately concluded that, because the case raised "an important issue involving highly significant policy considerations," summary judgment was inappropriate. *Id.*

Subsequently, in *DiCosala v. Kay,* 91 N.J. 159, 450 A.2d 508 (1982), the New Jersey Supreme Court formally recognized a cause of action for an employer's negligence in hiring or retaining an "incompetent, unfit or dangerous employee." *Id.* at 516. Like *Bennett, DiCosala* involved employee conduct that fell outside the scope of employment. A six-year-old child was injured during a visit to his uncle's residence, which was located on the grounds of a camp owned and operated by the Robert Treat Council of the Boy Scouts of America. *Id.* at 510. The boy's uncle was employed by the Boy Scouts as a ranger at the camp. *Id.* During the visit, a camp counselor also employed by the Boy Scouts accidentally shot the child with a gun owned by the uncle. *Id.* at 511. The court concluded that, although liability under *respondeat superior* was inappropriate (because neither possession of the gun nor the accidental shooting fell within the scope of employment, and because the child was not a guest at the camp, but rather a private visitor), the employers "owed a duty to this plaintiff to exercise reasonable care in the hiring and retention of their employees." *Id.* at 518.

Language in that opinion appears to emphasize the need for such a cause of action in cases where the employee acted *outside* the scope of his or her employment, thereby rendering liability under *respondeat superior* unavailable. For example, the Court held that "[a]n employer will only be held responsible for the torts of its employees *beyond the scope of the employment* where it knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons." *Id.* at 516 (emphasis added); *see also id.* at 515 (" 'One dealing with the public is bound to use reasonable care to select employees competent and fit. . . . When an employer neglects this duty and as a result injury is occasioned to a third person, the employer may be liable even though the injury was brought about by the willful act of the employee *beyond the scope of his employment.' ")* (quoting *Fleming v. Bronfin,* 80 A.2d 915, 917 (D.C.Mun.App.1951)) (emphasis added). In addition, the court observed that "the negligent hiring theory has been used to impose liability in cases where the employee commits an intentional tort, an action almost invariably outside the scope of employment. . . ." *DiCosala,* 450 A.2d at 515.

Subsequently, in *Cosgrove v. Lawrence,* 214 N.J.Super. 670, 520 A.2d 844 (1986), *aff'd by* 215 N.J.Super. 561, 522 A.2d 483 (1987), a lower court in New Jersey noted that *DiCosala* "recognized the tort of negligent hiring as a tort not dependent on principles of *respondeat superior.*" *Id.* at 849. The court continued: "Under *respondeat superior* an employer is responsible for only those acts committed within the scope of employment while negligent hiring covers acts outside the scope of employment as well. Thus, once a determination is made that the act is *not within the scope of employment,* the action becomes one of negligent hiring and supervision." *Id.* (internal citations omitted) (emphasis added).

Later, in *Mavrikidis v. Petullo,* 153 N.J. 117, 707 A.2d 977 (1998), the New Jersey Supreme Court characterized the import of the *DiCosala* decision in a similar fashion:

In *DiCosala, supra,* 91 N.J. at 172, 450 A.2d 508, as one of the principal bases

for that decision, we cited section 317 of the *Restatement (Second) of Torts* (1963), which states: 'A master is under a duty to exercise reasonable care so to *control* his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them.' (emphasis added). Comment a to that section expressly provides that the rule is 'applicable only when the servant is acting outside the scope of his employment.' *Id.* § 317 comment a. If the employee were acting within the scope of his employment, then the master may be vicariously liable under the standard agency principles. *Ibid.*

*Id.* at 984–85.

The New Jersey Practice Series is also instructive on this point:

> Employer liability to third parties for the torts of employees may be established under the doctrines of respondeat superior or negligent hiring/retention or supervision. Under the doctrine of respondeat superior an employer is liable only for those acts committed by employees within the scope of their employment. Negligent hiring/retention, however, applies to acts committed *outside* the scope of their employment. 'Thus, once a determination is made that the act is *not* within the scope of employment, the action becomes one of negligent hiring and supervision.'

18 N.J. Prac. *Employment Law* § 12.28 (West 1998) (quoting *Cosgrove v. Lawrence*, 214 N.J.Super. 670, 520 A.2d 844, 849 (1986)) (emphasis added).

Further, the Court notes that each case cited by Plaintiff herself involved employee conduct outside the scope of employment. In addition to *DiCosala*, described above, Plaintiff cites *Lingar v. Live–In Companions, Inc.*, 300 N.J.Super. 22, 692 A.2d 61 (1997), in which an employee of Live–In Companions was assigned to care for a disabled man, Ailon Lingar, while his wife was out of town. *Id.* at 63. The employee abandoned Lingar and stole items from the couple's home. *Id.* Similarly, in *Fleming v. Bronfin, Inc.*, 80 A.2d 915 (D.C.Mun.App.1951), which is quoted in *DiCosala*, an employee of Wheeler Super–Market allegedly assaulted a customer after he delivered groceries to her home. *Id.* at 916. All three cases, therefore, involved fact patterns under which the employer could not be found vicariously liable for the employee's conduct, rendering alternative theories of liability relevant.

As a result, this Court concludes that, like New York and the majority of jurisdictions that have considered this issue, New Jersey would not permit Plaintiff to proceed on her claim of negligent hiring, training, supervision, and retention in light of Defendants' admission that Jackson was acting within the course and scope of his employment at the time of the accident. Moreover, to the extent such claims are permitted in either New York or New Jersey when punitive damages are sought, that exception became inapposite here when Plaintiff withdrew any claims for punitive damages. Consequently, we determine that Plaintiff's cause of action against J.B. Hunt for negligent hiring, training, supervision and retention should be dismissed.

### III. Conclusion

For the foregoing reasons, Defendants' motion for partial summary judgment is GRANTED and Plaintiff's cause of action for negligent hiring, training, supervision and retention is DISMISSED.

SO ORDERED.