705 P.2d 937

**Ruth MARKOWITZ and David Lee Markowitz, Plaintiffs-Appellants,**

v.

**ARIZONA PARKS BOARD and State of Arizona, Defendants-Appellees.**

No. 1 CA–CIV 6111.

Court of Appeals of Arizona, Division 1, Department B.

Nov. 6, 1984.

Smith, Howard & DeRoon by Louis De-Roon, III, Phoenix, and Garner & Kreinces by Leonard Kreinces, Mamaroneck, N.Y., for appellants.

Teilborg, Sanders & Parks, P.C. by James A. Teilborg, John C. Gemmill, Phoenix, for appellees.

## OPINION

FROEB, Judge.

This is a negligence action to recover damages for injuries sustained by David Markowitz (hereafter referred to as plaintiff) when he dove into shallow waters of Lake Havasu. Plaintiff was 16 years old when the accident occurred on June 21, 1975, and was under 18 when the action was begun on his behalf by Ruth Markowitz, his mother.

The suit was brought against defendants Arizona Land Department, Arizona Parks Board and the State of Arizona (hereafter collectively referred to as "the State"). Suit against Joe T. Fallini, Commissioner of the Arizona Land Department, and Michael Ramnes, Director of the Arizona Parks Board, was earlier dismissed and the resulting judgment is not now before the court.

The State moved for and was granted summary judgment from which plaintiff and his mother now appeal.

Plaintiff sustained paralyzing injuries when his head struck a ledge or sandbar in the edge waters of Lake Havasu after he dove off a cliff on the shore. His complaint alleged that the State was negligent in failing to warn him of the dangerous conditions existing at the lake. The State moved for summary judgment on the ground that it owed plaintiff no duty to warn him of the danger of diving and that, even if it did, the failure to warn was not a proximate cause of his injuries.

The facts are taken from plaintiff's deposition. In June of 1975, plaintiff joined a friend and his family on a water skiing trip to Lake Havasu. From a campsite at the water's edge known as "Three Dunes," plaintiff and his companions spent two days water skiing and camping. At about 7:00 P.M., on the evening of June 21st, plaintiff went with his friends to a secluded cove located approximately sixty yards from the campsite, but hidden from view by the contour of the shoreline. The existence of the cove was previously unknown to plaintiff and had only been discovered by some of his companions earlier that day. When plaintiff arrived at the cove, he saw approximately fifteen people diving and swimming in the area. The waters of the cove reached to the base of a cliff from which plaintiff's companions had earlier in

the day been diving. Access to the diving spot was via a path up the back of the cliff which plaintiff described as "well worn". Without spending any time in the waters below the cliff, plaintiff proceeded up the path to the diving spot. From the top he watched one of his companions complete her dive and swim away unharmed. Plaintiff surveyed the water below, but because of fading light could not see below the surface. Taking a trajectory different from that of the first diver, plaintiff dove into the water, striking his head on a shallow ledge or sandbar beneath the surface. Plaintiff did not know the ledge or bar was there. It appears that had his dive been further out into the cove, he would have reached deep water. There were no signs posted anywhere near the cove prohibiting diving or warning of potential dangers. Nor were he or his companions given any warning when they entered the park. There is no evidence that the State or any of its personnel were aware that visitors to the park dove from the cliff into the water.

Plaintiff described himself as a "very good swimmer" and stated that he was aware of the risks of diving into unknown waters. He stated that he knew one should check the diving area by wading into it to determine the depth, but said that he assumed it was safe because of the number of people diving and swimming and the existence of the path.

■ Although summary judgment is not frequently granted in negligence cases, it is appropriate when the record demonstrates that there are no material issues of fact and that the moving party is entitled to judgment as a matter of law. *Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 639 P.2d 330 (1982). The material facts earlier set forth are not in dispute, and we do not find any disputed factual inferences arising from the undisputed facts in this case. Rather, the legal conclusions to be drawn from these facts are the matters in actual dispute and they are properly resolved by the court as questions of law. *Bennett v. Estate of Baker*, 27 Ariz.App. 596, 557 P.2d 195 (1976).

## DUTY TO WARN

■ To succeed in establishing liability against the defendant State, it is well settled in Arizona that the plaintiff must prove the elements of an action for negligence which are "a duty owed to the plaintiff, a breach thereof and an injury proximately caused by the breach." *Wisener v. State*, 123 Ariz. 148, 598 P.2d 511 (1979).

■ The traditional point of departure for establishing liability has always been an inquiry into whether the defendant owed a duty of care toward the plaintiff in the given factual setting. Whether a duty exists upon which a party harmed may recover for negligence is a question of law for decision by the court. *Barnum v. Rural Fire Protection Co.*, 24 Ariz.App. 233, 537 P.2d 618 (1975). If this were not so, everyone would be potentially liable to everyone else who has suffered accidental injury, the only question being whether the cause is proximate.

■ We approach the question of the duty of the State in a negligence case as we would the duty of an individual, a principle now well established in Arizona. *Ryan v. State*, 134 Ariz. 308, 656 P.2d 597 (1982); *Wisener v. State*. Thus, in this case, we must contemplate the possession of 45 miles of shoreline and 13,000 plus acres of undeveloped land as though held in possession by an individual but at the same time open to the public for use as a park. There is no dispute that members of the public, including the injured plaintiff, were permitted freely to enter upon the lands and waters of Lake Havasu Park and to use its resources for recreation. As such, they are classified as "invitees" for purposes of tort law. There is no dispute about this in the present case.

In considering the duty of the State, it is necessary to give some perspective to the physical and geographical circumstances involved. Lake Havasu Park is not a small, confined area with supervised facilities for campers and picnickers, constantly within view of park rangers and supervisory per-

sonnel. The area is essentially undisturbed and unimproved rolling desert terrain down to the water's edge. The State Parks publication describes it as follows:

LAKE HAVASU State Park is an unlikely meld of opposites—stark desert mountains meeting brilliantly blue water along 45 miles of shoreline to create a unique recreational world. The park extends from the Bill Williams River to Lake Havasu City and consists of 13,000-plus acres.

The general area where the diving accident occurred is described in the publication as follows:

Cattail Cove Unit: is 23 miles north of Parker on Ariz. 95 where it provides boat access and camping. Besides the launch ramp, facilities include showers and tent and camper sites with water and electricity provided ($2.25). One hundred boat camps dot the shoreline for several miles north and south of the Cove. They are accessible by water only and usually have pit toilet, table and firepot provided ($1.00). By land, nearest services are Parker Strip or Lake Havasu City; by water, Black Meadows across the lake or Havasu Springs seven miles south.

The cove and cliff from which the plaintiff dove are not particularly distinguishable from other areas of the lakeshore.

Lake Havasu Park is not unlike many natural areas in Arizona where matters of personal safety must necessarily be left to the individual since there are no other reasonable means of protection. In this sense, Lake Havasu Park is very much like other public lands which are open to the public, such as national forest land, national park land, federal lands managed by the Bureau of Land Management and various state lands. This varied, undeveloped natural environment, always inviting but often dangerous, accounts for more than 75% of the geographical area of the State and is open to the public. The waiting dangers are too numerous to set forth on any list of warnings or written precautions. If a duty on the part of federal or state government to take steps directed toward the safety of the public as it encounters the natural environment were to exist, it is difficult to say where it would start and where it would end.

■ The issue of a land possessor's duty of care is intertwined with the nature of the use. Recently, the Arizona Supreme Court held that a fall from a step in an automobile service station raised factual issues over whether the condition was open and obvious to the plaintiff, and, if so, whether the station owner should have anticipated the harm in any event. *Tribe v. Shell Oil Co., Inc.*, 133 Ariz. 517, 652 P.2d 1040 (1982). The court found the duty of care set forth in Restatement (Second) of Torts §§ 343 and 343A to be applicable:

§ 343. Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land *if, but only if,* he

(a) knows or by the exercise of reasonable care would discover the condition, *and should realize that it involves an unreasonable risk of harm to such invitees,* and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger. (emphasis added)

§ 343A. Known or Obvious Dangers

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.

The context out of which the foregoing sections of the Restatement arise is essentially that of human activity creating artificial conditions upon the land. As the court suggests in *Tribe*, natural conditions existing on the land resist a factual conclusion that they entail unreasonable risk of harm. If, as a matter of law, they do not present an *unreasonable* risk of harm, then the possessor of such land will not be liable for injury where the condition is open and obvious to visitors. In these circumstances, there is no duty on the part of the possessor to protect the visitor. § 343, Restatement (Second) of Torts. In the present case, we hold that the natural environment did not present an *unreasonable* risk of harm.

We turn then to whether the danger involved in diving from a cliff into water of unknown depth is open and obvious. We hold that such a danger is open and obvious and that summary judgment was correctly entered by the trial court. There are few risks more obvious and few harms more probable than those which arise from diving into shallow water. *See Carlson v. Tucson Racquet and Swim Club, Inc.*, 127 Ariz. 247, 619 P.2d 756 (App.1980) (recognizing, as obvious, the risk of diving into shallow water). This is supported by the undisputed facts of the present case. Plaintiff testified in his deposition that he was fully aware of the risks involved in diving into water from high places.

In conclusion, as to this issue, we note the recent decision of the Arizona Supreme Court in *Beach v. City of Phoenix*, 136 Ariz. 601, 667 P.2d 1316 (1983). In that case a pedestrian in the city of Phoenix encountered a fallen tree on the sidewalk, diverted his path of travel into the street to go around it, and was struck by an automobile. Summary judgment in favor of the defendant City of Phoenix based upon the open and obvious nature of the tree was reversed on the ground that the duty of care owed by a municipality to a pedestrian under these circumstances went beyond that which a possessor of land owes to an invitee. Thus the case is not directly applicable to the present case. In a footnote, however, the court adverted to the traditional standard of care owed by landowners to invitees and suggested that, even under that analysis, it was error to rule as a matter of law that the tree was open and obvious without considering certain exceptions to the general rule in the comments to Restatement (Second) of Torts § 343A. We do not find, however, that the exceptions referred to in the Restatement apply in this case so as to render the duty of care a fact question.

## PROXIMATE CAUSE

The essence of plaintiff's legal argument on this issue is that, defendant State of Arizona had a duty to warn of the danger presented by diving off the cliff into water of unknown depth. Even if we were to assume the existence of such a duty, the argument fails because the message of danger which would have been given by such a warning was already known and appreciated by the plaintiff.

In his deposition, plaintiff testified that the State should have warned him by means of a sign or signs stating that there were shallow areas and that the depth of the water should be checked before diving into it. However, plaintiff also testified that he was already aware of the danger of diving into shallow water. Therefore, the lack of a warning sign giving him information he already knew was not a cause of plaintiff's injuries. We hold that plaintiff has failed as a matter of law to show that the claimed omission on the part of the State resulted in his injuries. We recognize that generally the question of proximate cause is one for the jury. However, if after reviewing all the facts and circumstances reasonable men could not differ, proximate cause is a question for the court. *Harmon v. Szrama*, 102 Ariz. 343, 429 P.2d 662 (1967); *Flowers v. K–Mart*, 126 Ariz. 495, 616 P.2d 955 (App. 1980). We hold that the failure of the State to warn plaintiff was not a proximate cause of his injuries.

For the reasons discussed, the judgment of the trial court is affirmed.

GREER, Judge, concurring specially:

Unless a possessor of land should anticipate the danger, he is not liable to invitees for harm caused by known or obvious activities or conditions on the land. Restatement (Second) of Torts § 343A. To say that a possessor is not *liable*, however, is not to say there is no duty. The duty to exercise reasonable care remains constant, "though the acts which are necessary to fulfill it vary depending upon the circumstances, including the obvious character of the obstruction." *Beach v. City of Phoenix*, 136 Ariz. 601, 667 P.2d 1316 (1983).

In *Beach* our supreme court stated, "the correct issue is whether reasonable people might conclude that the City was negligent in failing to remedy a defect which was very open and obvious." 136 Ariz. at 604, 667 P.2d at 1319. In my opinion, the trial court could have correctly held as a matter of law that reasonable people could not conclude that the state was negligent. I therefore concur in the decision.

MEYERSON, Judge, dissenting:

Because the majority decision misapplies the often confusing concepts of duty and liability, I must respectfully dissent from its decision.

The majority concludes that the danger involved in diving from a rock into water of unknown depth is open and obvious. For the purpose of this dissent, I will concede the correctness of this conclusion.[1] But according to the majority, natural conditions which constitute open and obvious dangers, as a matter of law, do not present an unreasonable risk of harm, and therefore a possessor of land should not be liable for injuries caused by such conditions. Thus, the foundation of the majority decision is that as a matter of law the State may not be held *liable* for injuries caused by natural conditions amounting to open

and obvious dangers. The majority's error is twofold. First, the majority has failed to correctly state the duty which the State defendants owed to Markowitz. Second, the majority errs in concluding as a matter of law that defendants are not liable for the plaintiff's injuries.

A landowner owes the duty to exercise reasonable care to disclose dangerous conditions which are known to him and are not likely to be discovered by a visitor. *See Compton v. National Metals Co.*, 10 Ariz. App. 366, 369, 459 P.2d 93, 96 (1969); *Restatement (Second) of Torts* § 343 comment b (1965) (*Restatement*). Where, however, the landowner can and should anticipate that the dangerous condition will cause physical harm to the visitor notwithstanding its known or obvious danger, the landowner is not relieved of the duty of reasonable care. *Murphy v. El Dorado Bowl, Inc.*, 2 Ariz.App. 341, 409 P.2d 57 (1965); *see Restatement* § 343A comment f. This duty may require the landowner to warn a visitor against the known or obvious condition or activity, if the landowner has reason to expect that the visitor will nevertheless suffer physical harm. *Restatement* § 343A, comment (f).

The majority decision fails to appreciate that this "duty remains constant, though the acts which are necessary to fulfill it vary depending upon the circumstances, including the obvious character" of the dangerous condition. *Beach v. City of Phoenix*, 136 Ariz. 601, 603, 667 P.2d 1316, 1318 (1983). As explained in *Beach*, the nature of the open and obvious condition is relevant to whether a defendant is negligent as opposed to whether or not the defendant owes a duty to the plaintiff.

Relying upon dicta in *Tribe v. Shell Oil Co.*, 133 Ariz. 517, 652 P.2d 1040 (1982), the majority concludes that natural conditions constituting an open and obvious danger cannot under any circumstances impose liability on the State. In *Tribe*, the plaintiff

---

1. The majority's conclusion concerning the open and obvious issue may be incorrect. *Davis v.*

*United States,* 716 F.2d 418, 423 (7th Cir.1983).

approached a water fountain on the defendant's premises by taking a short step of approximately six inches to get on the sidewalk where the fountain was located. After getting her drink, she turned around while cautioning her daughter about the traffic, and stepped off a sixteen-inch step on the front of the sidewalk and fell, shattering her wrist. The supreme court concluded that summary judgment was improper because reasonable minds could easily disagree as to whether a sixteen-inch step down is open and obvious to one who has ascended a six-inch step up. In the course of its decision, the court distinguished *Robles v. Severyn*, 19 Ariz.App. 61, 504 P.2d 1284 (1973), where a three and one-half year old child was injured by a sharp palm frond on a tree in a neighbor's yard. The supreme court in distinguishing *Robles*, stated that "[w]e are not dealing with a natural condition such as a palm tree on the premises of the service station." 133 Ariz. at 519, 652 P.2d at 1042. I do not interpret the supreme court's statement to suggest that in all cases a landowner may not be liable for injuries due to dangerous natural conditions.

First, this view has been expressly rejected in the *Restatement.*

Liability of a possessor of land who invites or permits licensees to enter his land is not based upon a duty to maintain it in safe condition. It is based upon his duty to disclose ... the risk which they will encounter if they accept his invitation or permission. He is required to exercise reasonable care either to make the land as safe as it appears, or to disclose the fact that it is as dangerous as he knows it to be. Therefore it is *immaterial that a dangerous condition known to him,* and which he has reason to believe that the licensee will not discover, *is natural rather than artificial.*

*Restatement* § 342 comment e (emphasis added). Although not articulated by the supreme court, its reaffirmance of the *Robles* decision was undoubtedly based upon the view expressed in the *Restatement* that the duty to warn of known or obvious dangerous conditions does not apply if the

landowner has no reason to expect that the visitor will suffer physical harm from the dangerous condition. *Restatement* § 343A comment f. Also, central to the court of appeals decision in *Robles* was the conclusion that the plaintiff went upon the neighbor's property as a gratuitous licensee and therefore must take the property in the condition he finds it and must assume all risks incidental to such condition.

Once the inquiry properly focuses on the issue of duty, it is clear that the majority errs in concluding that the State owed no duty to Markowitz. Implicit in the majority's conclusion is the notion that because diving into the lake is an open and obvious danger, the State could not foresee that Markowitz would injure himself. But where "the establishment of the duty, i.e., foreseeability of harm, varies as a result of factual distinctions, ... what is foreseeable is a question for the trier of fact." *Arizona Public Service Co. v. Brittain,* 107 Ariz. 278, 280, 486 P.2d 176, 178 (1971).

Under the facts before us, I conclude that reasonable minds could differ as to whether the State should have foreseen that park visitors might dive into the lake. The Arizona Parks Board adopted the following regulation which applied to Lake Havasu Park at the time of the accident.

Swimming shall be permitted only at bathing beaches or other areas designated for such purpose.

R12–8–16 (repealed Jan. 28, 1976). Another regulation required that the foregoing prohibition was to be prominently posted at state parks. R12–8–37 (repealed Jan. 28, 1976). Yet, as the majority correctly notes, no such warnings were placed at the entrance to the park. It is apparent from the above regulation that a jury could conclude that the State recognized that swimming in undesignated areas may be dangerous. Implicit in the regulation, must be the fact that diving in unauthorized areas would likewise be dangerous. Thus, a jury could conclude that the state knew of the potentially dangerous condition created by the

possibility that park visitors would dive into the lake.

Likewise, this is a situation in which the dangerous condition is one in which a jury could find that the State would have reason to expect that Markowitz "may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." *Restatement* § 343A comment f. As the majority candidly points out, the state actively promotes the use of Lake Havasu State Park as a "unique recreational world." A jury could find that the State would expect its invitees to swim and dive as part of the recreational use of the lake. Markowitz testified in his deposition that a well-worn path existed to give access to the diving spot. He observed approximately fifteen people diving and swimming in the area and one of his companions successfully dived from the cliff and swam away unharmed. Because of the recreational nature of the park and the State's promotion of the park for water recreational sports, a jury could conclude that the State would have reason to expect that visitors may suffer physical harm from diving into unknown waters despite the open and obvious danger of such activity.

This view is quite consistent with Arizona law. In *Murphy v. El Dorado Bowl, Inc.*, the plaintiff, a regularly paying patron of defendant's bowling alley, fell over a "drop-off" adjacent to the lane where he was bowling. The defendant contended the condition was open and obvious. The court concluded that what "might be perfectly obvious to a person walking normally is likely to be forgotten by a contestant in the excitement of the game." 2 Ariz.App. at 343, 409 P.2d at 59. The court relied upon the sections of the *Restatement* cited above. Once the "man-made/natural" condition distinction is discarded, as it correctly should be, the logic of *Murphy v. El Dorado Bowl, Inc.* highlights the fallacy of the majority decision.

The second basis of the majority decision in affirming the summary judgment is the conclusion that as a matter of law, Markowitz failed to show that the absence of a warning by the State caused his injury. The basis of the majority conclusion is Markowitz's deposition testimony that he was already aware of the danger of diving into shallow water. The majority concludes that a lack of a warning sign giving him information he already had was not the cause of his injury. The majority's analysis, however, has been consistently rejected by courts which have considered virtually this identical issue.[2]

In *Hawk v. City of New Port Beach*, 46 Cal.2d 213, 293 P.2d 48 (1956), the plaintiff was injured when he dived from a rock on a public recreational beach. The city contended that the plaintiff was guilty of contributory negligence as a matter of law because he was fully aware of the physical conditions of the rock, was accustomed to swimming and diving and did not know the depth of the water into which he dove. The court noted, as in the case before us, that the plaintiff had never previously used the area but had seen other persons diving from the rock and followed another boy to the rock and watched him dive into the water and swim away unharmed. Under those facts, the Supreme Court of California held that the issue of contributory negligence was properly submitted to the jury for its determination.

In *Miller v. United States*, 597 F.2d 614 (7th Cir.1979), the plaintiff was injured when he dove into the shallow water of a lake in a national wild life refuge. Despite the fact that the plaintiff had been a swimmer and diver for most of his life, the court concluded that the facts failed to show the plaintiff was contributorily negligent as a matter of law. The plaintiff dived off a boat dock extending fifty feet into the water. Before he dived, he saw one man in the water toward the end of the pier who

---

2. The majority's affirmance of the summary judgment based upon its characterization of the plaintiff's conduct, or more precisely his contributory negligence, is certainly incorrect because in Arizona the issue of contributory negligence is always for the jury. Ariz. Const., art. 18, § 5.

appeared to be treading water. He saw two or three people in the water along the side of the pier about twenty feet from shore. After someone shouted that the water was "fine," he dived into the lake where the water depth was only three feet. Among the facts the court found to be significant were that the plaintiff knew that individuals had previously used the boat dock area for swimming and wading and that the United States had a safety plan which recommended that swimmers be warned that swimming was permitted only at designated beaches.

In conclusion, the majority is concerned that imposing liability in this case might force an additional burden upon governmental agencies to place warnings throughout the many hundreds of thousands of acres of public lands. These fears, however, are unfounded. Placing appropriate warnings at the entrances to areas used by the public or noting the warning in brochures or permits would not be an unreasonable administrative task. *Davis v. United States*, 716 F.2d 418, 424 (7th Cir. 1983).

Should the majority be concerned about the cost of imposing liability upon government landowners, it is readily apparent that the defense of contributory negligence exists in this case as it would in other cases where the injured party encounters a dangerous condition and subjects himself to it despite its obvious and known character. Furthermore, the duty to warn of obvious dangers is a fact-intensive standard. In other words, it is relative to time, place and circumstance. In many cases, summary judgment may be appropriate. This, however, is not such a case.

For the foregoing reasons, I dissent.