IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

————————————

**ROXANNE PEREZ,**
*Plaintiff/Appellant,*

*v.*

**CIRCLE K CONVENIENCE STORES, INC.,**
**A FOREIGN CORPORATION,**
*Defendant/Appellee.*

————————————

No.  CV-24-0104-PR
**Filed March 12, 2025**

————————————

Appeal from the Superior Court in Maricopa County
The Honorable Joan M. Sinclair, Judge
No.  CV2020-010129

**REVERSED AND REMANDED**

————————————

Opinion of the Court of Appeals,
Division One
257 Ariz. 271 (App. 2024)

**VACATED IN PART**

————————————

COUNSEL:

David L. Abney (argued), Ahwatukee Legal Office, P.C., Phoenix; Timothy G. Tonkin, Nasser Abujbarah, Kevin Valdez, Phillips Law Group, P.C., Phoenix, Attorneys for Roxanne Perez

Wade R. Causey (argued), CHDB Law LLP, Tempe, Attorneys for Circle K Convenience Stores, Inc.

Adam Studnicki, Studnicki Law Firm, Scottsdale; Benjamin Jemsek, Sara Thomas, Sweet James, LLP, Phoenix, Attorneys for Amicus Curiae Arizona Association for Justice/Arizona Trial Lawyers Association

CHIEF JUSTICE TIMMER authored the Opinion of the Court, in which VICE CHIEF JUSTICE LOPEZ, JUSTICES BOLICK, BEENE, MONTGOMERY, KING, and PELANDER (Retired)[*] joined.

CHIEF JUSTICE TIMMER, Opinion of the Court:

¶1       While shopping in a Circle K convenience store, Roxanne Perez tripped over a store display of bottled water and injured herself. She sued Circle K Convenience Stores, Inc. ("Circle K") for negligence and premises liability.   The issue here is whether courts should consider if the store display constituted an unreasonably dangerous condition when determining whether Circle K owed Perez a duty of care.   We conclude that whether Circle K's store display was an unreasonably dangerous tripping hazard had no bearing on that duty issue.   Because Perez was Circle K's business invitee, it owed her a duty to keep the store in a reasonably safe condition while she was in the market.   Whether the display was an unreasonably dangerous condition is a consideration in determining whether Circle K breached the standard of conduct underlying its duty to Perez.

**BACKGROUND**

¶2       In March 2020, Perez went to a Circle K store she frequently patronized to buy ice cream.   After getting the ice cream from a freezer, she turned to enter the next aisle when she tripped and fell over a single

---

[*]   Due to the retirement of Justice Robert Brutinel, pursuant to article 6, section 3 of the Arizona Constitution, Justice John Pelander, retired Justice of the Arizona Supreme Court, was designated to sit in this matter.

case of water set on the floor at the end of that aisle. Circle K had placed the case there as an "end-cap" display, which showcases the market's goods. Perez maintains she did not see the case of water before tripping.

**¶3** Perez sued Circle K, alleging negligence and premises liability and seeking damages for injuries suffered from her fall. She alleged Circle K had notice that the single case of water was a dangerous condition and therefore breached its duty by failing to either remedy the condition or warn her of it.

**¶4** The superior court granted Circle K's motion for summary judgment, finding as a matter of law that Circle K did not owe Perez a duty. The court reasoned that because the water display was an open and obvious condition, Perez would have seen it had she looked down, and the display therefore did not "pose[] an unreasonable risk of harm sufficient to impose a duty on Circle K to protect [Perez]." In a divided opinion, the court of appeals affirmed. *Perez v. Circle K Convenience Stores, Inc.*, 257 Ariz. 271, 273 ¶ 1 (App. 2024).

**¶5** We granted Perez's petition for review because whether a court in a premises liability case properly considers whether a condition is unreasonably dangerous in deciding the existence of a duty is a potentially recurring issue of statewide importance. We have jurisdiction pursuant to article 6, section 5(3), of the Arizona Constitution and A.R.S. § 12-120.24.

## DISCUSSION

**¶6** "We review the entry of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party." *Dinsmoor v. City of Phoenix*, 251 Ariz. 370, 373 ¶ 13 (2021). Summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). Also, "[w]hether a duty exists is a legal issue we determine de novo." *Dinsmoor*, 251 Ariz. at 373 ¶ 14.

### A. Perez Must Show That Circle K Owed Her A Duty Of Care To Prevail On Her Negligence And Premises Liability Claims.

¶7        Negligence and premises liability each require proof that (1) the defendant owed a duty to the plaintiff to conform to a standard of conduct that protects the plaintiff from an unreasonable risk of harm; (2) the defendant breached that standard; (3) a causal connection exists between the defendant's acts or omissions and the plaintiff's injury; and (4) the plaintiff suffered actual damages. *See Cal-Am Props. Inc. v. Edais Eng'g Inc.*, 253 Ariz. 78, 81 ¶ 5 (2022) (negligence); *Dabush v. Seacret Direct LLC*, 250 Ariz. 264, 267 ¶ 9 (2021) (premises liability); *McMurtry v. Weatherford Hotel, Inc.*, 231 Ariz. 244, 252 ¶ 23 (App. 2013) (premises liability). Here, we are concerned with duty. Duties are based either on special relationships recognized by the common law or on relationships shaped by public policy. *Dinsmoor*, 251 Ariz. at 373 ¶ 14; *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 565 ¶ 14 (2018).

¶8        One relationship that creates a duty is the business-invitee relationship. *See Tribe v. Shell Oil Co.*, 133 Ariz. 517, 519 (1982). This relationship forms when a business owner invites persons to enter or remain on property possessed by the owner for purposes directly or indirectly connected with its business dealings. *See Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 143 (1982). "The law is clear in Arizona that a proprietor of a business is under an affirmative duty to make the premises reasonably safe for use by invitees." *Tribe*, 133 Ariz. at 519; *see also Chiara v. Fry's Food Stores of Ariz., Inc.*, 152 Ariz. 398, 399 (1987); *Nicoletti*, 131 Ariz. at 143; *Preuss v. Sambo's of Ariz., Inc.*, 130 Ariz. 288, 289 (1981); *Walker v. Montgomery Ward & Co., Inc.*, 20 Ariz. App. 255, 258 (1973).

¶9        Indisputably, Circle K, as a business owner, has an affirmative duty to make and keep its markets reasonably safe for customers, who are invitees. *Tribe*, 133 Ariz. at 519. But Arizona law does not require business owners to insure their customers' safety by keeping the business premises absolutely safe. *See Preuss*, 130 Ariz. at 289. In slip-and-fall cases — or here, a trip-and-fall — the mere occurrence of the fall is insufficient to prove the owner's negligence. *See id.* Rather, to prove that the owner breached the standard of care imposed by the duty to invitees, the plaintiff must show the owner either (1) created the unsafe condition; (2) had actual knowledge or notice of it; or (3) should have discovered and remedied the unsafe condition before the fall. *See Walker*, 20 Ariz. App. at 258–59 (cited

with approval in *Preuss*, 130 Ariz. at 289); *see also McMurtry*, 231 Ariz. at 252 ¶¶ 22–23 (stating that a hotel owed an invitee "a duty of reasonable care to make its premises safe for her use," which required the hotel to safeguard against or warn of unreasonably dangerous conditions).

**B.  Perez Does Not Have To Show That An Unreasonably Dangerous Condition Actually Existed At The Market To Establish That Circle K Owed Her A Duty Of Care.**

**¶10**        The issue here is whether a business owner's duty exists absent evidence that an unreasonably dangerous condition actually existed on the business premises.   Circle K argues that a business owner has no duty to its customers absent such a condition, and the court of appeals majority agreed.   *See Perez*, 257 Ariz. at 278 ¶ 27 ("In determining duty, the superior court was permitted to examine facts sufficient to establish whether an 'unreasonably dangerous' condition existed to trigger a duty by Circle K under law.").   Perez counters that because she was a business invitee, "Circle K automatically owed her a duty of care."

**¶11**        In urging their position, both Circle K and the court of appeals rely extensively on this Court's decision in *Dinsmoor*.   That case arose from tragic events that ended in the murder-suicide of two high school students. *See Dinsmoor*, 251 Ariz. at 371 ¶ 1.   The school had learned of an altercation between students Matthew and Raven; had investigated a claim by Ana, Matthew's then-current girlfriend, that Matthew had threatened Raven's safety; and had taken actions to protect Raven.   *See id.* at 372 ¶¶ 3–8.   On the day of her death, Ana told school officials she planned to meet Matthew after school but did not think he posed a threat to her safety.   *Id.* at 373 ¶ 10.   The school took no action but told Ana it would be unwise to meet with Matthew.   *Id.*   Ana met Matthew at a friend's house, where he shot and killed her and then himself.   *Id.*

**¶12**        Dinsmoor, Ana's mother, sued the school district and its employees (collectively "the school") for negligence.   *Id.* ¶ 11.   The issue before us was whether the school owed a duty of care to Ana.   *Id.* at 372 ¶ 1.   We acknowledged that "the school-student relationship creates a duty to protect students from unreasonable risks of harm arising within the confines of the relationship."   *Id.* at 376 ¶ 24.   But we clarified that "[a] duty based on special relationships . . . applies only to 'risks that arise within the scope of the relationship,'" and "the scope of such relationships

is [generally] 'bounded by geography and time.'" *Id.* at 374 ¶ 17 (first quoting *Boisson v. Ariz. Bd. of Regents*, 236 Ariz. 619, 623 ¶ 10 (App. 2015); then quoting Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 40 cmt. f. (Am. L. Inst. 2012)). Because nothing alerted the school that Matthew posed a threat to Ana before she left the school's custody and control, "a known and tangible risk of harm did not arise within the scope of the school-student relationship," and we therefore decided that the school "did not owe a duty to protect Ana from Matthew." *Id.* at 377 ¶ 28.

¶13        Notably, in deciding whether we could reach our decision as a matter of law, we addressed our prior opinion in *Gipson v. Casey*, 214 Ariz. 141, 145 ¶ 21 (2007), which stated that the existence of duty "is a legal matter to be determined *before* the case-specific facts are considered." *See Dinsmoor*, 251 Ariz. at 376 ¶ 26. We concluded that considering whether the risk to Ana arose while she was in the custody and control of the school in deciding duty was consistent with *Gipson*. *See id.* at 376–77 ¶ 27. After noting that *Gipson* did not concern special relationships, we explained:

> Logically, a court cannot determine whether a duty arises from such relationships unless it considers whether an unreasonable risk of harm arose while, for example, persons were patronizing an inn, riding a bus, or, here, attending school. *See* Restatement § 40(b) (2012) (listing special relationships). Identifying the risk within the scope of the special relationship does not touch on concepts of breach or causation, so there is no danger of conflating duty with those elements. *See Gipson*, 214 Ariz. at 145 ¶ 21; *see also Dabush v. Seacret Direct LLC*, 250 Ariz. 264, 272 ¶¶ 33–35 (2021) (rejecting argument that court could not consider case-specific facts to determine as a matter of law that a defendant had not assumed a duty to plaintiff).

*Id.*; *see also Avitia v. Crisis Preparation & Recovery Inc.*, 256 Ariz. 198, 211 ¶ 63 (2023) (Timmer, V.C.J., concurring in part, dissenting in part, and concurring in the result) ("As we concluded in *Dinsmoor . . .* a court does not act contrary to *Gipson* by examining the case-specific facts to decide whether 'an unreasonable risk of harm' arose from a special relationship to trigger a duty.").

¶14        Circle K and the court of appeals majority extrapolate from *Dinsmoor* that in the premises liability context, the existence of duty depends on whether an alleged unreasonably dangerous condition was, in fact, unreasonably dangerous.   *See Perez*, 257 Ariz. at 274–75 ¶¶ 12–13; *see also Ager v. A Better Today Recovery Servs. LLC*, No. 1 CA-CV 21-0081, 2021 WL 4757567, at *2 ¶¶ 8–11 (Ariz. App. Oct. 12, 2021) (mem. decision) (interpreting *Dinsmoor* in a similar manner).   We disagree and now clarify *Dinsmoor*.

¶15        The purpose in examining case-specific facts in the duty inquiry involving a special relationship is determining *when* and *where* the alleged risk of harm arose—within or outside the scope of the special relationship—not *whether* the alleged risk actually constituted an unreasonably dangerous condition.   *See Dinsmoor*, 251 Ariz. at 376 ¶ 26. Thus, in *Dinsmoor*, the "known and tangible risk of harm" was that Matthew would physically harm Ana.   *See id.*   But because nothing suggested that this risk arose while Ana was in the school's custody or control, and therefore within the school-student relationship, the school had no duty to Ana to protect her from Matthew once she left the school's custody and control.   *See id.* at 377 ¶ 28.   Similarly, in cases involving other special relationships like a common carrier with its passengers; an innkeeper with its guests; or a business with its invitees, courts may examine case-specific facts to determine whether the alleged risk of harm arose within the scope of those relationships.   *See id.*; *see also* Restatement § 40(a)–(b) (providing that "[a]n actor in a special relationship" like those listed above "owes the other a duty of reasonable care with regard to risks that arise within the scope of the relationship").   In these examples, a court would ask whether the alleged risk of harm arose while the plaintiff was on the bus; in the inn; or shopping in the store.   If so, the risks arose within the scope of the relationship, and a duty exists.   *See Dinsmoor*, 251 Ariz. at 376 ¶ 24; Restatement § 40 cmt. f.

¶16        Adopting a contrary view would conflate the duty and breach inquiries and therefore conflict with myriad prior cases.   This Court's opinion in *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352 (1985), illustrates the conflict.   There, David, a teenager, was paralyzed after diving off a cliff into a shallow lake while on a camping trip in a state-leased recreation area. *Id.* at 354.   In the subsequently filed negligence action, the superior court granted summary judgment for the state on the issue of duty, and the court of appeals affirmed.   *Id.* at 353–54.   The latter court reasoned that the state

did not owe David a duty because "'the natural environment did not present an unreasonable risk of harm,' and because the danger was open and obvious." *Id.* at 354 (quoting *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 260, 264 (App. 1984)).

¶17　　　　This Court reversed, concluding that the state owed a duty of care to David. *Id.* at 359. We reasoned that the state, as possessor of the recreation area, owed an affirmative duty to David, its invitee, "to use reasonable care to make the premises safe for use." *Id.* at 355. This standard of care included an obligation to discover and warn of hazards that the state should have reasonably foreseen as dangerous to invitees. *Id.* Importantly, we found a duty solely because at the time of the accident David was an invitee on land the state possessed. *Id.* In doing so, we disagreed that whether the cliff area presented an unreasonable risk of harm or whether the danger of diving into a lake of unknown depth was open and obvious affected the existence of duty. *Id.* at 355–56. Rather, we emphasized that these factual issues are properly considered in determining whether the state breached the standard of conduct imposed by the duty. *Id.*

¶18　　　　Several other cases echo *Markowitz* on these points. *See, e.g.*, *Gipson*, 214 Ariz. at 145 ¶ 21 (stating that courts should not "defin[e] duties of care in terms of the parties' actions in particular cases" because "a fact-specific discussion of duty conflates the issue with the concepts of breach and causation"); *Coburn v. City of Tucson*, 143 Ariz. 50, 52 (1984) (defining standard of care as "[w]hat the defendant must do or must not do . . . to satisfy the duty" (quoting W. Prosser & W. Keeton, *The Law of Torts* § 53 at 356 (5th ed. 1984))); *Beach v. City of Phoenix*, 136 Ariz. 601, 603 (1983) (stating that "the nature [or obvious character] of the obstruction . . . is not important to determine whether the City owed a duty to the pedestrian, but rather to determine whether the City breached the duty of reasonable care"); *Tribe*, 133 Ariz. at 519 (providing that whether a condition was dangerous or open and obvious "are issues to be decided by a jury . . . as triers of fact"); *Shaw v. Petersen*, 169 Ariz. 559, 561 (App. 1991) ("Whether a reasonable person would believe a pool was an open and obvious hazard . . . is a question that relates to the breach of duty, not its existence."); *McLeod ex rel. Smith v. Newcomer*, 163 Ariz. 6, 9–10 (App. 1989) (providing that whether a condition was unreasonably dangerous or open and obvious are questions of fact and considering them when determining breach).

¶19 The contrary view of *Dinsmoor* urged by Circle K and the court of appeals majority conflicts with *Markowitz* and like cases by resolving in the duty determination whether Circle K's end-cap display presented an unreasonably dangerous condition. But *Dinsmoor* did not alter the duty analysis in the *Markowitz* line of cases. Rather, *Dinsmoor* complemented the *Markowitz* analysis by focusing on whether, when a harm occurs outside the traditional time-and-space bounds of a special relationship, the risk of harm nonetheless arose within the special relationship to trigger a duty. In *Dinsmoor*, the school did not have a duty to Ana because the risk of harm from Matthew did not arise within the school-student relationship. *See* 251 Ariz. at 377 ¶ 28. Similarly, in *Markowitz*, had David been injured in a car accident on the way to or from the state recreation area, the state would not have owed a duty to him. The tangible risk of injury from a traffic accident away from the recreation area and outside the state's control would have existed outside the land possessor-invitee relationship. *See id.* But because the risk of harm presented by the cliff area existed while David was visiting the recreation area, which the state possessed, the state owed him a duty of care. *See id.*; *Markowitz*, 146 Ariz. at 355.

¶20 To summarize, as in *Dinsmoor*, sometimes certain antecedent facts must be considered in determining whether a duty exists—for instance, whether a statute applies to a circumstance to give rise to a duty; whether a person is an invitee, licensee or trespasser; or whether the alleged risk of harm occurred within the scope of a special relationship. *See, e.g.*, *Westerman v. Ernst*, No. 2 CA-CV 2023-0205, 2025 WL 261789, at *4 ¶ 17 (Ariz. App. Jan. 22, 2025) (concluding that a genuine issue of material fact concerning the plaintiff's status as an invitee or trespasser precluded summary judgment on the issue of duty). However, factual issues of breach and causation are not part of this inquiry. Rather, they generally are questions for the jury once a duty is established.

¶21 Circle K and the court of appeals majority's analysis conflicts with *Markowitz* by resolving within the duty determination whether Circle K's end-cap display presented an unreasonably dangerous condition or was open and obvious. Instead, consistent with *Markowitz* and *Dinsmoor*, the proper inquiry in the duty analysis is whether a special relationship existed between the plaintiff and defendant and, if so, whether the risk of harm alleged to have injured the plaintiff arose within that relationship. Here, that means asking whether Perez was a business invitee at the time

she tripped over the end-cap display (the risk of harm). She indisputably was. Thus, as a matter of law, Circle K owed a duty of care to Perez. Whether the end-cap display was unreasonably dangerous should be considered when addressing whether Circle K breached the standard of conduct. *See Markowitz*, 146 Ariz at 355–56. Then, considerations like the open and obvious nature of the display can be considered. *See Beach*, 136 Ariz. at 603; *Tribe*, 133 Ariz. at 519.

¶22 The court of appeals majority expressed concern that owners would never be entitled to summary judgment in premises liability cases if they owe a duty to invitees whenever the latter are injured on the premises by an alleged unreasonably dangerous condition. *See Perez*, 257 Ariz. at 275 ¶ 15. This concern is overstated. Although breach and causation are usually factual issues for the jury, they can be resolved as a matter of law when the record supports that result. *See McFarland v. Kahn*, 123 Ariz. 62, 63 (1979) (affirming directed verdict for a landlord in a premises liability case on the issue of breach); *Cummings v. Prater*, 95 Ariz. 20, 27 (1963) (affirming summary judgment for a landlord in a premises liability case on the issue of breach); *see also Gipson*, 214 Ariz. at 143 ¶ 9 n.1 (stating that summary judgment may sometimes be appropriate on issues of breach and causation); *Grafitti-Valenzuela ex rel. Grafitti v. City of Phoenix*, 216 Ariz. 454, 460 ¶ 18, 461–62 ¶ 28 (App. 2007) (affirming summary judgment for city because it did not breach its duty to keep a bus stop safe for users and the lack of shelter and lighting at the bus stop did not cause a child's abduction); *Coburn*, 143 Ariz. at 53 (finding as a matter of law that a city did not breach its duty to a child bicyclist to keep streets reasonably safe for travel); *Church of Jesus Christ of Latter Day Saints v. Superior Court*, 148 Ariz. 261, 263 (App. 1985) (same). Indeed, the specially concurring judge in the court of appeals would have affirmed the summary judgment because he concluded that "Perez failed to show a genuine issue of material fact that Circle K breached its duty of care to her when she shopped at the store." *See Perez*, 257 Ariz. at 278–79 ¶ 33 (Howe, J., specially concurring).

¶23 Finally, although a breach of duty issue can sometimes be resolved as a matter of law, we decline to decide now whether summary judgment was appropriate for Circle K on that basis. Circle K moved for summary judgment solely on the issue of duty. Therefore, we conclude that any other issues regarding premises liability should be fully briefed and decided in the trial court before appellate review.

**CONCLUSION**

¶24 For the foregoing reasons, we vacate the court of appeals' opinion except ¶¶ 30–31, which address an evidentiary issue not before us. We reverse the superior court's entry of summary judgment for Circle K and remand the case to that court for further proceedings.