639 P.2d 353

**Mitchell KASSMAN, Plaintiff/Appellant,**

**v.**

**BUSFIELD ENTERPRISES, INC., an Arizona corporation; Paul Ash Investment Company, an Arizona corporation; George Porter Tomlins and Jane Doe Tomlins, husband and wife, Defendants/Appellees.**

**No. 2 CA–CIV 3944.**

Court of Appeals of Arizona, Division 2.

Nov. 4, 1981.

Rehearing Denied Dec. 11, 1981.

Review Denied Jan. 6, 1982.

Feller & Cohen by Jeffrey R. Feller and Cruse & Firetag by Robert J. Cruse, Phoenix, for plaintiff/appellant.

Lesher, Kimble & Rucker, P.C. by Stephen H. Lesher, Tucson, for defendants/appellees Busfield and Tomlins.

Everett, Bury & Moeller, P.C. by David C. Bury, Tucson, for defendant/appellee Paul Ash.

## OPINION

HATHAWAY, Chief Judge.

Mitchell Kassman brought this suit for personal injuries, alleging assault and battery, negligent supervision, and negligent hiring. Jury verdicts were returned against the defendants Whitaker, Busfield and Tomlins in the sum of $100,000 as compensatory damages. The jury found in favor of the defendant Paul Ash Investment Company (Ash).

The defendants Busfield and Tomlin were granted a new trial on the issue of liability and the plaintiff was denied its motion for judgment n. o. v. or in the alternative a new trial against the defendant Paul Ash Investment Company. This appeal follows from the trial court's rulings on the post-trial motions.

The incident out of which the lawsuit arose occurred shortly after midnight on

January 22, 1978, when the plaintiff, with two friends, entered a bar known as Jekyll & Hydes, operated by defendant Busfield Enterprises, Inc. The plaintiff and his friends became involved in an argument with another customer in the parking lot of the bar. George Tomlins, employed as a "bouncer" at Jekyll & Hydes, chased the plaintiff and his friends to the Tucson House, where Tomlins shouted, "Armed robbery. Get the police" at the defendant Whitaker, the Tucson House doorman and an employee of Ash. The plaintiff and his companions were not armed. Whitaker, armed with a pistol, pursued the plaintiff and his companions into the parking lot of the Tucson House. He fired two or three shots into the air. When the plaintiff continued running, Whitaker fired at him. He was struck and fell to the ground. This lawsuit ensued as a result of the injuries the plaintiff suffered.

At the conclusion of the evidence, while jury instructions were being discussed, counsel for the defendants Busfield and Tomlin indicated that he desired an instruction on intervening/superseding cause, although he had not formally prepared and offered such an instruction pursuant to rule 51(a), Rules of Civil Procedure. The court agreed to give such an instruction and indicated that it would give the instruction, using Instruction No. 3.79 from the California Book of Approved Jury Instructions (BAJI).

The court inadvertently failed to give the instruction, and counsel did not notice the oversight and therefore did not bring it to the court's attention, even though the court invited additions or corrections to the instructions. In granting the defendants Busfield's and Tomlin's motion for new trial, the court stated:

"There was evidence to support Plaintiff's contention that Defendant Tomlin [sic] negligently shouted to Defendant Whitaker that Plaintiff was armed and dangerous and should be stopped, and that Defendant Whitaker should help stop Plaintiff. There was also evidence to suggest that thereafter, defendant Tomlin [sic] saw Defendant Whitaker grab a gun and that Defendant Tomlin [sic] accompanied Whitaker around the building to the point where the shooting occurred. However, there was also evidence in support of movants' contention that Tomlin [sic] had no idea that Whitaker had a gun and that Tomlin [sic] did not join Whitaker in the chase.

Thus, there was evidence in support of movants' theory that Whitaker's conduct superceded Tomlin's [sic]. Plainly, the court erred in failing to give the 'superceding cause' instruction which it said it would give. Since movants did not bring this error to the Court's attention when given an opportunity to do so before the jury retired, and may not have even argued the point to the jury, the question is whether the Court's error is 'fundamental.' The Court believes that the error was and is fundamental, even though the jury was given an appropriate, basic, definition of proximate cause. That instruction did not inform the jury that, even though they might find Tomlin [sic] had negligently set in motion the process by which Plaintiff was injured, they might nevertheless relieve movants of liability if they found that Whitaker's possession and use of a gun was in no way known or foreseeable to Tomlin [sic] at the time in question."

Along with other reasons, plaintiff contends that the trial court erred in granting a new trial to Busfield and Tomlins for failure to give an intervening/superseding cause instruction, because the matter was waived in the absence of their calling it to the trial court's attention. Rule 51(a), Rules of Civil Procedure, provides in part:

"No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict . . . ."

■ Where an instruction is inadvertently omitted by the trial court, and counsel does not direct the court's attention to the matter, the right thereafter to complain is lost, *Coyner Crop Dusters v. W.O. Marsh*, 90 Ariz. 157, 367 P.2d 208 (1961), reversed on

other grounds, 91 Ariz. 371, 372 P.2d 708, and the matter will not be considered on appeal in the absence of fundamental error. *Tryon v. Naegle*, 20 Ariz.App. 138, 510 P.2d 768 (1973). The fundamental error doctrine is sparingly applied in civil cases, *Ortega v. State*, 6 Ariz.App. 356, 432 P.2d 904 (1967), such as where constitutional infirmities are in question, *Layton v. Rocha*, 90 Ariz. 369, 368 P.2d 444 (1962), or where the very foundation of the case is undercut, *Wagner v. Coronet Hotel*, 10 Ariz.App. 296, 458 P.2d 390 (1969). We do not find the failure of the trial court to instruct on intervening/superseding cause in the instant case, in the absence of timely objection or notification to the court from counsel, to constitute fundamental and reversible error. Cf., *Patania v. Silverstone*, 3 Ariz.App. 424, 415 P.2d 139 (1966), where the court held that "the failure to instruct on the issue of licensee and trespasser, without a request, was not such a vital issue as to constitute fundamental and reversible error." 3 Ariz.App. at 428, 415 P.2d 139.

At the conclusion of the presentation of evidence, the trial court directed a verdict in favor of the defendant Ash on the issue of negligent hiring. The plaintiff moved for a new trial against Ash on three grounds, the first being that the trial court erred in directing a verdict in favor of Ash on the issue of negligent hiring.

■ The general rule concerning negligent hiring and supervision of employees is found in Restatement (Second) of Agency, § 213:

"A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

(a) in giving improper or ambiguous orders of [sic] in failing to make proper regulations; or

(b) in the employment of improper persons or instrumentalities in work involving risk of harm to others: [sic]

(c) in the supervision of the activity; or

(d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control."

Comment d states in part:

"One who employs another to act for him is not liable under the rule stated in this Section merely because the one employed is incompetent, vicious, or careless. If liability results it is because, under the circumstances, the employer has not taken the care which a prudent man would take in selecting the person for the business in hand. What precautions must be taken depend upon the situation. One can normally assume that another who offers to perform simple work is competent. If, however, the work is likely to subject third persons to serious risk of great harm, there is a special duty of investigation.

Liability results under the rule stated in this Section, not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment. The employer is subject to liability only for such harm as is within the risk. If, therefore, the risk exists because of the quality of the employee, there is liability only to the extent that the harm is caused by the quality of the employee which the employer had reason to suppose would be likely to cause harm."

Somewhat analogous to the situation before us is the factual setting in *Olson v. Staggs-Bilt Homes, Inc.*, 23 Ariz.App. 574, 534 P.2d 1073 (1975), where a patrolman-employee was hired to patrol two subdivisions where construction was under way. No special training was required for him to perform his duties and the job was relatively simple. If anything went awry, he was to contact the proper authorities and not become involved. Although he was not authorized to carry a weapon, he did so on the occasion in question when the third person was injured when the weapon accidentally discharged. The court held that a prima facie case had not been made out.

Similarly in the instant case, Whitaker was not authorized to carry a firearm or

any other type of weapon while carrying out his duties as doorman. As in *Olson* where the employee's work was relatively simple and no special training was required, Whitaker's job as doorman likewise was relatively simple and required no special training. If difficulties arose, he was to contact the security guard.

The record discloses no evidence showing that Whitaker was known to be a vicious or careless person when he was hired. Employment and personal references were checked by the project manager for the Tucson House prior to Whitaker's employment, and this disclosed no prior employment problems. Any weapons that Whitaker carried during his employment were for his own protection on the job, according to his testimony. No notice had been given to his employer and his employer had received no complaints about Whitaker's performance as a doorman at the Tucson House.

The contention that Ash was derelict in failing to inquire about Whitaker's past criminal activities we find to be without merit in furnishing a valid jury issue, especially since the job to be filled was simply that of a doorman and did not require the use of weapons or dealing with security problems. In *Evans v. Morsell*, 284 Md. 160, 395 A.2d 480 (1978), where a bartender shot the plaintiff, the plaintiff alleged the negligent hiring and retention of an employee because the bartender's vicious propensities should have been found out due to his past criminal record. The court disagreed and held that there was no duty to inquire about the prospective employee's possible criminal record.

■ It is next contended that the trial court's exclusion of evidence of defendant Whitaker's alleged violent conduct prior to his employment was error. For reasons already discussed, we disagree. Any prior criminal activities of Whitaker were irrelevant to the issues at hand in view of the nature of his employment, which involved no risk of harm to others or the carrying of dangerous weapons. The record indicates that the employer made a reasonable inquiry to ascertain his fitness for employment.

Additionally, counsel for the plaintiff made no attempt to offer evidence of Whitaker's prior conduct as it pertained to the defendant Ash on the issue of negligent hiring. Objection to the character evidence was made by Whitaker's counsel and it was ruled on as not relevant and therefore inadmissible on the basis of that objection. No offer of proof was made and thus there was no showing to the court about the character of the prior conduct, its relevance, remoteness or whether Ash should have known of it.

The contention is made that the character evidence should have been admitted under *Estate of Arrington v. Fields*, 578 S.W.2d 173 (Tex.Civ.App.1979). There, however, the employee was an armed security guard and the court, adverting to the hazardous nature of the occupation, noted that such a job would require a skilled employee. The duty on the part of the employer to make particular inquiry was therefore especially important. *Arrington* is inapposite in that the job there is not comparable to the one in the instant case. Also, *Vanderhule v. Berinstein*, 285 App.Div. 290, 136 N.Y.S.2d 95, modified at 284 App.Div. 1089, 136 N.Y. S.2d 349 (1954), which is relied upon by the plaintiff, is distinguishable in that there the employer may have had actual notice of misconduct on the part of the employee in the performance of his job.

■ Lastly, the plaintiff contends that the trial court erred in its refusal to admit Exhibit C into evidence on the grounds that it was unnecessarily prejudicial and gave an inadmissible opinion. Exhibit C, a handwritten note sent to Bruce Ash from his father Paul Ash, alluded to possible responsibility for Whitaker's conduct in the light of certain insurance liability policies. It is argued that the note should have been admitted because it was offered for "proof of agency." It is contended that the note is directly relevant to the question of whether Whitaker was acting within the scope of his employment by Ash. The trial court acted well within its discretion in excluding the exhibit on the grounds of prejudice. 17A A.R.S., Rules of Evidence, rule 403.

For the reasons heretofore given, the order granting a new trial to the defendants Busfield Enterprises, Inc. and Tomlins is reversed and the denial of a new trial as to the defendant Paul Ash Investment Co. is affirmed.

HOWARD and BIRDSALL, JJ., concur.