Kevin Charles SMITH, Petitioner,

v.

CITY AND COUNTY OF DENVER, acting By and Through ITS BOARD OF WATER COMMISSIONERS, Respondent.

No. 84SC477.

Supreme Court of Colorado, En Banc.

Oct. 20, 1986.

Bragg & Dubofsky, P.C., Douglas E. Bragg, Denver, for petitioner.

Zarlengo, Mott, Zarlengo & Winbourn, John C. Mott, Karen R. Wells, Denver, for respondent.

Colorado Trial Lawyers Ass'n, Gerald P. McDermott, Denver, amicus curiae.

VOLLACK, Justice.

We granted certiorari to review the court of appeals' opinion in *Smith v. City and County of Denver*, 695 P.2d 770 (Colo.App. 1984). We affirm.

## I.

On September 3, 1979, the petitioner, Kevin Charles Smith, dived off a rock cliff and struck the bottom of a portion of the South Platte River, in an area known as "The Chutes." The petitioner was rendered quadriplegic as a result of the dive. The petitioner instituted this negligence action against the respondent City and County of Denver, acting by and through its Board of Water Commissioners (the Board), which is the owner of the land where The Chutes is located.

During the jury trial, the respondent moved for a directed verdict at the end of the petitioner's case and at the close of all of the evidence. The trial court reserved ruling on the issues of duty and breach of duty until after the jury returned its verdict. The jury determined that the Board was 51% negligent, the petitioner was 49% negligent, and awarded total damages in the amount of $25,000. The respondent moved for a judgment notwithstanding the verdict, which the court granted, along with the motion for directed verdict, thereby dismissing the petitioner's claim.

On appeal, the court of appeals affirmed, holding the respondent had no duty of care to maintain the property in a reasonably safe condition because the alleged hazard existed as a result of a natural condition. The court of appeals further held the respondent had no duty to warn of the hazards of diving into the river because the petitioner had a greater knowledge of the risks than the respondent.

The evidence established that the petitioner had gone to The Chutes about twelve times before the date of his injury, and swam and dived on those occasions. Prior to the date in question, the petitioner had heard a story of someone being killed while diving at The Chutes. He knew the water level varied depending on the amount of runoff. On the day of the accident, the petitioner first waded across the river downstream to get to the rocks from which he dived. The water came up to just above his waist as he waded across. After waiting in line to dive, the petitioner determined he would dive into the darkest area of the river pool which he estimated to be between six and ten feet in depth. He could not see the bottom from that point, and had not measured the depth of the pool, but others were diving into this area. On his first dive, the petitioner touched his outstretched hands on the bottom of the pool in the river. Because there were several people waiting to dive from the spot from which he first dived, the petitioner then went to a location a short distance downstream, which was about two feet lower in elevation than the site of the first dive. On the second dive, the petitioner angled his dive back to the pool, but struck his neck and shoulders on the bottom of the river and was rendered quadriplegic.

At the time of the accident, no signs or fences barred the public from entering The Chutes, although some portions of a county road running nearby were posted with "no parking" signs. The location has been a popular recreation area used for tubing and swimming. The Board had previously posted "no swimming or bathing permitted" signs in the area over a period of several years; however, those signs would be torn down a few days after being posted. Three other people had received similar injuries while diving at The Chutes prior to the petitioner's accident. Because of heavy recreational use, the Board arranged for trash removal from the area, and entered into a license agreement with Douglas County to allow the county to use a portion of the Board's land for public parking. The Board charged no fee to those entering its land for recreational purposes.

In the court of appeals, the petitioner argued the Board was negligent in failing to maintain the property in a reasonably safe condition in light of the foreseeability of injury to him. The petitioner argued that the determination of whether the Board met the standard of care imposed by the case of *Mile High Fence Co. v. Radovich*, 175 Colo. 537, 489 P.2d 308 (1971), is a question of fact for the jury except in cases where the facts are undisputed and reasonable minds could draw but one inference from them. The court of appeals disagreed with the petitioner's contentions, holding it was the activity in which the petitioner chose to engage which created and gave rise to the risk and subsequent injury. The court considered the petitioner's status as a trespasser as a factor in determining that the Board did not owe a duty of care to the petitioner. The court concluded as a matter of law that the Board breached no duty to the petitioner, either by act of commission or omission, and held the trial court was correct in entering a judgment dismissing the petitioner's claim notwithstanding the verdict.

## II.

■ The question of whether a defendant owes a plaintiff a duty to act to avoid injury is a question of law to be determined by the court. *Metropolitan Gas Repair Service, Inc. v. Kulick*, 621 P.2d 313, 317 (Colo.1980); Prosser, *The Law of Torts* § 37 (4th ed. 1971). Whether the law should impose a duty requires consideration of many factors including, for example, the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the actor. *See Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187 (Colo.1984) (foreseeability); *Turner v. Grier*, 43 Colo.App. 395, 608 P.2d 356 (1979).

■ When considering premises liability in *Mile High Fence Co. v. Radovich*, 175 Colo. 537, 489 P.2d 308 (1971), we held that the status or classification of one who is upon the property of another, i.e., trespasser, licensee, or invitee, is not determinative of the occupant's responsibility or the degree of care which he owes to that person. *Id.* at 548, 489 P.2d at 314. We held the occupant, in the management of his property, should act as a reasonable person in view of the probability or foreseeability of injuries to others. *Id.* Thus, a person's status as a trespasser, licensee or invitee may have some bearing on the question of liability, but it is only a factor to be considered in making the determination. *Id.* at 548, 489 P.2d at 314–15.

■ Owners and occupiers of land, however, are not insurers against every foreseeable accident which might occur. *Webb v. Thomas*, 133 Colo. 458, 296 P.2d 1036 (1956); *Burchinal v. Gregory*, 41 Colo.App. 490, 586 P.2d 1012 (1978). Where the potential for danger is readily apparent, a warning of the obvious is not necessary. *Id.* at 492, 586 P.2d at 1013–14. In the instant case, the potential for danger was readily apparent. Diving from boulders into a river in its natural state obviously creates a high potential for injury. *Markowitz v. Arizona Parks Board*, 705 P.2d 937 (Ariz.App.1984) (danger involved

in diving from cliff into water of unknown depth was open and obvious); and *see, e.g., Hensley v. Muskin Corp.,* 65 Mich.App. 662, 238 N.W.2d 362 (1975) (diving from a seven-foot high garage into a four-foot deep pool is dangerous). We conclude that under the circumstances the Board did not have a duty to warn the petitioner of the inherent dangers involved in the activity in which he chose to engage because the potential for danger was readily apparent. Moreover, because the alleged hazard existed as a result of the natural condition of the terrain and river at The Chutes, the Board had no duty to make the area safer by, for example, filling the diving pool with boulders as the petitioner suggests. *See Markowitz v. Arizona Parks Board,* 705 P.2d 937; and *see* Restatement (Second) of Torts § 363(1) (1965).

Having concluded as a matter of law that no duty existed between the Board and the petitioner, it is apparent that a negligence action cannot be maintained on this set of facts. In the absence of a duty, there can be no breach of duty and, therefore, no liability imposed upon the landowner. The trial court delayed ruling on the issue of duty until such time as it heard sufficient evidence to make the determination as a matter of law whether such a duty existed. Even though the determination was made following the entry of the jury verdict, the trial court's conclusion was correct, and accordingly it did not err in entering a judgment notwithstanding the verdict and granting the motion for directed verdict.

### III.

Following the entry of the jury's verdict in favor of the petitioner, the trial court ruled that it should have granted the motion for directed verdict based upon the testimony of the petitioner. The jury initially began to sign a verdict form stating that the respondent's negligence was not a cause of any of the injuries claimed by the petitioner. Subsequently, the foreperson inquired if the jury could continue its deliberations, and it then returned a verdict in favor of the petitioner. In light of the fact that the petitioner's medical expenses alone far exceeded the verdict amount, the court concluded the jury's verdict was "not really a finding of negligence on the part of the defendant. It was really an exercise in sympathy for the plaintiff." The trial court concluded the jury did not act as reasonable people would under ordinary circumstances, and granted the motion for judgment notwithstanding the verdict, in addition to granting the motion for directed verdict. The trial court concluded the evidence did not establish liability on the part of the Water Board.

C.R.C.P. 50(a) allows the court to grant a motion for directed verdict when, viewing the evidence in a light most favorable to the party against whom the motion is directed, it determines that reasonable jurors could not disagree, and no evidence or inference has been received at trial upon which a verdict against the movant could be sustained.

In this case, in the absence of a duty of care, the entry of a directed verdict in favor of the Board was proper. In the absence of such a duty, no amount of evidence could have imposed liability upon the Board.

A judgment notwithstanding the verdict can be entered only if the evidence is such that, viewing the evidence in a light most favorable to the party against whom the motion is directed, reasonable people could not reach the same conclusion as the jury. *Thorpe v. Durango School District No. 9-R,* 41 Colo.App. 473, 591 P.2d 1329 (1978), *aff'd,* 200 Colo. 268, 614 P.2d 880 (1980). Here, because the court granted the motion for directed verdict, it was unnecessary for it to have considered the motion for judgment notwithstanding the verdict. Based upon the lack of a duty to warn, the motion for directed verdict was proper, and the trial court did not err in overturning the jury's verdict.

We conclude the result reached in this case was correct and therefore affirm the judgment of the court of appeals.

Judgment affirmed.

DUBOFSKY, J., does not participate.