Grayce M. CONNES, Plaintiff–Appellant,

v.

**MOLALLA TRANSPORT SYSTEMS, INC., A Washington Corporation, Defendant–Appellee.**

No. 90CA0675.

Colorado Court of Appeals, Div. 4.

March 28, 1991.

As Modified on Denial of Rehearing May 16, 1991.

Certiorari Granted Sept. 23, 1991.

Greengard Senter Goldfarb & Rice, James E. Goldfarb, Paul E. Collins, Peter H. Doherty, Denver, for plaintiff-appellant.

Mark F. Marceaux, Denver, for defendant-appellee.

Opinion by Judge DAVIDSON.

Defendant, Molalla Transport Systems, Inc., employed Terry Lee Taylor as a long-haul driver. In January 1988, while traveling through the state transporting freight for defendant, Taylor stopped at a hotel and sexually assaulted plaintiff, Grayce M. Connes, the night clerk at the hotel. As a result, plaintiff brought this action against defendant, alleging that it was liable for damages caused by this assault under the theories of negligent hiring, negligent entrustment, negligence *per se*, and *respondeat superior*. The trial court granted summary judgment to defendant on all of plaintiff's claims, and plaintiff appeals. We affirm.

The following facts are undisputed. In November 1987, Taylor applied for employment with defendant. In addition to a personal interview with Fred Magenheim, President of Molalla, Taylor filled out a job application indicating that he had 12 years of driving experience with a good driving record, and had served in the military for four years. Although the record shows that Taylor had prior criminal convictions, on his application he indicated that he had never been convicted of a crime. Taylor also listed four past employers and presented a valid driver's license from Oregon where Taylor had worked since May 1986.

Magenheim then contacted Chester Hahn, a valued employee of defendant's who had referred Taylor to defendant, and was informed that Taylor was an experienced line driver with a good driving record. Magenheim also contacted Taylor's previous employer, H. B. Hall Trucking, and again, was given a good recommendation by the owner, a long time acquaintance of Magenheim. Defendant also sent employment verification forms to Taylor's other former employers.

After receiving verification that Taylor's driving record showed that he had incurred only minor traffic violations in Oregon, Taylor was hired as a long-haul driver. Among his duties, Taylor was informed that drivers were expected to stay on the highways and stops were authorized only for servicing the vehicle and to obtain food. The drivers were to sleep only at rest stops along the highway and were to use the sleeping compartments located in the trucks.

Taylor made four or five interstate trips for defendant without incident. Then, in January 1988, Taylor was traveling to Oregon when he exited the highway and drove by a hotel where he observed plaintiff, alone inside the lobby. Taylor stopped and went inside the hotel "in hopes that [plaintiff] would want to have sex with him." After inquiring about a room, Taylor sexually assaulted plaintiff.

In this resulting action, plaintiff alleged the following: (1) defendant had failed adequately to investigate Taylor's past criminal record and therefore is liable for negligently hiring Taylor; (2) defendant knew or should have known Taylor would use the truck in such a manner as to create an unreasonable risk of harm to others with the result being that defendant is liable for negligent entrustment; (3) defendant did not investigate Taylor's employment record as required by 49 C.F.R. § 391, et seq. (1989) with the result being that defendant is liable under the principles of negligence *per se;* and (4) Taylor was within the scope of his employment when he committed the assault with the result being that defendant is liable under the doctrine of *respondeat superior.*

Defendant moved for summary judgment on the grounds that plaintiff failed to state any claim upon which relief can be granted pursuant to C.R.C.P. 12(b)(5). The trial court granted this motion and this appeal followed.

## I.

Plaintiff first contends that the trial court erred in granting summary judgment to defendant on her negligent hiring claim. Specifically, plaintiff argues that defendant was negligent in not conducting a background investigation of Taylor's criminal record before "putting him into the stream of commerce" where it was foreseeable Taylor would harm plaintiff.

The trial court found that, even if it were assumed that defendant had breached a duty of care to plaintiff, such negligence was not the proximate cause of plaintiff's harm. Therefore, the trial court held that, as a matter of law, defendant was not liable for negligent hiring. We agree with the trial court's conclusion, but on different grounds.

Although Colorado has explicitly recognized the tort of negligent hiring, *Colwell v. Oatman*, 32 Colo.App. 171, 510 P.2d 464 (1973), we have not previously discussed this theory of liability with reference to the negligent hiring of an individual with criminal propensities.

In general, the theory of negligent hiring is that "[a]n employer whose employees are brought into contact with members of the public in the course of their employment is responsible for exercising a duty of reasonable care in the selection ... of its employees." *Di Cosala v. Kay*, 91 N.J. 159, 450 A.2d 508 (1982). Therefore, if an employer negligently hires an individual who is incompetent or unfit for the job, and knew or should have known through a reasonable investigation that the employee was unfit, the employer may be liable to third parties whose injuries were proximately caused by the employer's negligence. *Di Cosala v. Kay, supra.*

According to the Restatement (Second) of Agency § 213 comment d (1958), an employee may be deemed incompetent because of a reckless or vicious disposition, and if an employer, without exercising due care in hiring, employs a person with such propensities to do an act which necessarily brings him into contact with others, the employer may be liable for harm caused by the propensity.

However, to maintain an action for negligent hiring, the plaintiff must first show that the defendant owed a duty to the plaintiff or to the class of which she is a member. *See Turner v. Grier*, 43 Colo. App. 395, 608 P.2d 356 (1979); Restatement (Second) of Agency § 213 comment a (1958).

Here, plaintiff argues that defendant owed a duty to the general public to use reasonable care in the hiring of its truck drivers. Specifically, she contends that this duty of care must necessarily include a duty to investigate potential drivers' nonvehicular criminal record because it is foreseeable that if drivers with such a record are "put into the stream of commerce," they will commit another crime during their employment. We disagree.

Whether a defendant owes a duty to investigate a potential employee's criminal record is a threshold question of law for the court. *See Hilberg v. F.W. Woolworth Co.*, 761 P.2d 236 (Colo.App.1988). In determining whether the law imposes a duty on a particular defendant, many factors must be considered including, "the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the [defendant's] conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the [defendant]." *Smith v. City & County of Denver*, 726 P.2d 1125 (Colo.1986). "No one factor is controlling, and the question of whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards—whether reasonable persons would recognize a duty and agree that it exists." *Taco Bell, Inc. v. Lannon*, 744 P.2d 43 (Colo.1987).

The concept of foreseeability as it relates to the imposition of a duty "is based on common sense perceptions of the risks created by various conditions and circumstances." *Taco Bell, Inc. v. Lannon, supra.* Generally, the question of foreseeability depends on whether a reasonably

prudent and careful person should have anticipated, under the same or similar circumstances, that injury to the plaintiff or those in a like situation would probably result from the act. *See Parker v. City & County of Denver*, 128 Colo. 355, 262 P.2d 553 (1953).

■ Accordingly, under a negligent hiring theory, whether harm is foreseeable requires an assessment of "whether the risk of harm from an employee to a person such as the plaintiff was reasonably foreseeable as a direct result of the employment." *Di Cosala v. Kay, supra; see* Restatement (Second) of Agency § 213 comment d (1958).

■ Therefore, whether harm from hiring a person with a criminal record is foreseeable necessarily depends on whether the nature of the employment and the type of contact the employee has with the public as a result of the employment is such that a prudent person would have anticipated that harm would have occurred as a result of the employment. *See* Note, *Employer Liability Under the Doctrine of Negligent Hiring: Suggested Methods for Avoiding the Hiring of Dangerous Employees*, 13 Del.J.Corp.L. 501 (1988).

■ Under the circumstances of this case, we do not believe that a reasonable person would anticipate that the general public would be subject to harm from non-vehicular criminal acts by a long-haul truck driver as a *result* of this employment. The type of harm which is foreseeable as a result of employing long-haul truck drivers is harm from vehicular accidents because of the extensive driving involved in such employment. Here, the record shows that defendant sought employees with good driving records, who would be responsible for the equipment entrusted to them, and who had prior experience in long-haul interstate transportation.

Moreover, the nature of the employment with this defendant is such that its drivers have only limited, incidental contact with the general public. *See* Note, *supra.* In this regard, it is undisputed that Taylor was specifically instructed that he was not authorized to stop at a hotel nor would he be reimbursed for any lodging expenses. Instead, he was to stay on the interstate highway system and to use the sleeping compartment in his truck at rest stops.

Therefore, given the nature of employment involved in this case and the type of contact this employee had with the public, a violent attack upon a hotel clerk would not be a reasonably foreseeable consequence of this employment. *See Janssen v. American Hawaii Cruises, Inc.*, 69 Haw. 31, 731 P.2d 163 (1987) (union did not owe a duty of care to ship's waiter in the hiring of ship's chef because sexual attack on waiter was not foreseeable consequences of chef's employment).

Our conclusion that defendant did not owe plaintiff a duty to investigate Taylor's non-vehicular criminal record is confirmed when we balance the risk involved against the burden placed on defendant to guard against such harm. Here, considering the nature of Taylor's employment, we consider the likelihood of harm to plaintiff as being extremely remote. Thus, to impose a duty upon defendant would, in effect, require it to act as an insurer for the general public for *any* injuries caused by a driver with a prior non-vehicular criminal record.

Furthermore, placing this responsibility upon defendant in this situation would be unfair and unduly burdensome. *See Taco Bell, Inc. v. Lannon, supra; Baugher v. Hattersley & Sons, Inc.*, 436 N.E.2d 126 (Ind.App.1982) (such a rule would, in effect, hold employers absolutely liable for the actions of any employee with a criminal record); *Evans v. Morsell*, 284 Md. 160, 395 A.2d 480 (1978) ("It may today be quite difficult to obtain criminal records.").

Moreover, the practical consequences of such a rule could significantly deter defendant from employing any driver with a non-vehicular criminal record. *See Evans v. Morsell, supra* ("[W]hen one has completed a criminal sentence or has been paroled, the employer to some extent is entitled to rely upon the determination of the government's criminal justice system that the individual is ready to again become an active member of society."). *See also* Note, *Em-*

*ployer Liability for the Criminal Acts of Employees Under Negligent Hiring Theory: Ponticas v. K.M.S. Investments,* 68 Minn.L.Rev. 1303 (1984).

Thus, under the circumstances presented by this case, we decline to impose such a duty upon this defendant. Accordingly, we conclude that defendant did not owe a duty to plaintiff to investigate its potential truck drivers' non-vehicular criminal record. And, since no duty was owed, summary judgment was properly entered for defendant on this theory of recovery.

## II.

 Plaintiff next contends that the trial court erred in granting summary judgment to defendant on her negligent entrustment claim. Although plaintiff admits that the operation of the truck was not improper in itself, she argues that the doctrine of negligent entrustment should be extended to include liability for an employer who entrusts a vehicle to an individual who has a criminal record. We disagree.

To recover for the negligent entrustment of a vehicle, plaintiff must prove that: 1) defendant permitted its employee to use a vehicle, 2) which was under defendant's control, and 3) defendant either knew or should have known that this employee was likely to use the vehicle in such a manner as to create an unreasonable risk of harm to others. *Hasegawa v. Day,* 684 P.2d 936 (Colo.App.1983); Restatement (Second) of Torts § 308 (1965).

Additionally, plaintiff must also show that the entrusted vehicle was used in a negligent manner, *Northern Insurance Co. v. Ekstrom,* 784 P.2d 320 (Colo.1989), and that the negligent use of the vehicle caused plaintiff's injuries. Restatement (Second) of Torts § 390 (1965); *see Dickens v. Barnham,* 69 Colo. 349, 194 P. 356 (1920); Comment, *Negligent Hiring and Negligent Entrustment: The Case Against Exclusion,* 52 Or.L.Rev. 296 (1973). *See also Butcher v. Cordova,* 728 P.2d 388 (Colo.App.1986) (defendant may be liable for negligent entrustment of pistol to child when pistol misfired and injured child); *Hasegawa v. Day, supra* (parents

may be liable for negligent entrustment of car to child when child had accident while driving).

Here, however, plaintiff admits that defendant's truck was not used improperly or negligently. Moreover, plaintiff does not even allege that the truck, in any way, caused plaintiff's injuries. Therefore, because plaintiff has offered no persuasive reason to extend the theory of negligent entrustment, we decline to do so.

## III.

 Finally, plaintiff argues that the trial court erred in denying her negligence *per se* claim. Specifically, she claims the defendant failed to conduct a proper investigation of Taylor's former employment record as required by 49 C.F.R. § 391, et seq. (1989) which regulates the employment of drivers by interstate motor carriers and that, therefore, defendant was negligent *per se.*

The trial court found, however, that even if it were assumed *arguendo* that defendant had failed to comply with these regulations, the type of harm suffered by plaintiff was not the kind which the statute was enacted to prevent, and therefore, it concluded that defendant was entitled to summary judgment on this claim. We agree.

Although the federal regulation at issue here can form the basis for a negligence *per se* claim, *Hageman v. TSI, Inc.,* 786 P.2d 452 (Colo.App.1989), a breach of this statutory duty is "actionable only by one who is a member of the class the statute was designed to protect, and only where the injury suffered by such person is the type of injury which the statute was enacted to prevent." *Leake v. Cain,* 720 P.2d 152 (Colo.1986).

In 1971, the Department of Transportation enacted substantial revisions to 49 C.F.R. § 391, et seq. (1989) which regulates the qualifications of the drivers of commercial motor vehicles and requires interstate motor carriers to conduct background investigations of their drivers. The purpose of enacting these regulations was explained in the Federal Highway Administrator's introduction to the 1971 revisions which provides:

"[P]ublic interest in motor vehicle safety requires upgrading the training and ability of drivers, hiring as drivers only persons whose records demonstrate their capability for safe operation of heavy vehicles. . . .

. . . .

"[T]here are many factors which contribute to the dismal toll of deaths, injuries and property damage. [Thus] adherence to improved driver qualification rules will play a vital part in the overall effort *to improve motor vehicle safety.*" 35 Fed. Reg. 6458 (1970) (emphasis added).

Therefore, contrary to plaintiff's assertions, we agree with the trial court that these regulations were designed to protect the traveling public against unqualified interstate truck drivers and thereby to prevent accidents, not to protect the public from the type of harm suffered by plaintiff. *See Hageman v. TSI, Inc., supra* (death of motorist on highway caused by rear-end collision with truck is type of harm statute was designed to prevent). Therefore, summary judgment was properly granted on plaintiff's claims.

Judgment affirmed.

METZGER and ROTHENBERG, JJ., concur.