**Grayce M. CONNES, Petitioner,**

v.

**MOLALLA TRANSPORT SYSTEM, INC., a Washington Corporation, Respondent.**

**No. 91SC358.**

Supreme Court of Colorado, En Banc.

June 29, 1992.

---

Greengard Senter Goldfarb & Rice,
James E. Goldfarb, Paul E. Collins, Peter
H. Doherty, Denver, for petitioner.

Mark F. Marceaux, Denver, for respondent.

Justice QUINN delivered the Opinion of the Court.

We granted certiorari to review the court of appeals' decision in *Connes v. Molalla Transport System, Inc.*, 817 P.2d 567 (Colo.App.1991), which upheld the district court's entry of summary judgment in favor of the defendant, Molalla Transport System, Inc. (Molalla), on a negligence claim brought by the plaintiff, Grayce M. Connes, against Molalla for the negligent hiring of a long-haul truck driver who sexually assaulted Connes during the course of transporting freight for Molalla on an interstate trip. The court of appeals held that Molalla had no legal duty to investigate the non-vehicular criminal record of its driver prior to hiring him as an employee. We affirm the judgment of the court of appeals and hold that Molalla had no legal duty to conduct an independent prehiring investigation of the driver's non-vehicular criminal record under the circumstances of this case.

## I.

The basic facts pertinent to the issue before us are undisputed. Molalla is a Washington corporation licensed by the Interstate Commerce Commission to transport goods in interstate commerce, and uses long-haul truck tractors to transport its freight. These truck tractors are self-contained vehicles equipped with extra fuel tanks and a sleeping compartment behind the driver's seat. Molalla instructs its drivers to stay on interstate highways during their trips and to stop only for an emergency, to service the vehicle, to eat, and to sleep. Drivers are not authorized to use hotel or motel accommodations while in transit, but instead are directed to use the sleeping compartment behind the driver's seat at rest stops along the interstate highway system.

Molalla's policy is to seek safe drivers upon whom it can depend to deliver the loads assigned to them and to take care of the equipment entrusted to them. As part of its standard hiring procedure, Molalla conducts a personal interview with each applicant and requires the applicant to fill out an extensive job application form and to produce a current driver's license and a medical examiner's certificate. Molalla also contacts prior employers and other references about the applicant's qualifications and conducts an investigation of the applicant's driving record in the state where the applicant obtained the driver's license.

On November 6, 1987, Terry Lee Taylor applied for employment as a Molalla long-haul driver. Taylor filled out a detailed application form, which included information regarding his prior employments, his current driver's license, his driving experience and record, whether he had ever been convicted of a crime, and other background information. Taylor indicated on the application form that he had no criminal convictions. Taylor was interviewed by the president of Molalla, Fred Magenheimer, who specifically asked Taylor during the interview whether he had been convicted of a crime. Taylor responded in the negative and produced a valid driver's license and medical examiner's certificate from the State of Oregon.

Following the interview, Magenheimer contacted Chester Hahn, one of his valued employees, who had referred Taylor to Molalla. Hahn told Magenheimer that Taylor was an experienced driver with a good driving record. Magenheimer also contacted

Taylor's present employer, Harry Hall of H.R. Hall Trucking, Inc. in Oregon. Magenheimer had known Hall for a number of years and considered him trustworthy and candid. Hall told Magenheimer that he considered Taylor to be a good driver, that he took good care of equipment and was dependable, and that he would have no problem in hiring him. Magenheimer also sent an employment verification form to one of Taylor's former employers, L.G.H. Trucking, which responded by stating that Taylor left its employment in May 1987 because of a conflict with the dispatcher and would not be reemployed. Magenheimer decided to hire Taylor as a long-haul driver pending confirmation of Taylor's driving record from the State of Oregon. Several days later Molalla received confirmation of Taylor's Oregon driving record, which showed only one speeding violation and one "logbook" violation.

Magenheimer did not conduct an independent investigation to determine whether Taylor had been convicted of any crime. Although Taylor denied any prior criminal convictions on his application and during his interview, various law enforcement and court records obtained subsequent to the events in question show that Taylor had been convicted of three felonies in Colorado—a 1973 conviction for possession of burglary tools, a 1975 conviction for second-degree forgery, and a 1977 conviction for felony theft—and had been issued three citations for lewd conduct and another citation for simple assault in Seattle, Washington, in 1983 and 1984, and also had been issued a citation for fourth-degree assault and domestic violence in Portland, Oregon in 1985.

On January 28, 1988, approximately three months after Taylor began working for Molalla, he was assigned to transport freight from Kansas to Oregon. While traveling through Colorado, Taylor left the highway and drove by a Holiday Inn where Grace Connes was working as a night clerk. After observing Connes alone in the lobby as he was driving by the motel, Taylor pulled his truck into the parking lot and entered the lobby. Once inside, Taylor sexually assaulted Connes at knifepoint. Tay-

lor was arrested at the scene when a police officer made a routine stop at the hotel. Taylor admitted his sexual attack on the victim, stating that "I need help ... this is the first time I've ever gotten aggressive ... I always thought I could control it."

Connes sued Molalla on the theory of negligent hiring, claiming that Molalla knew or should have known that Taylor would come into contact with members of the public, that Molalla had a duty to hire and retain high quality employees so as not to endanger members of the public, and that Molalla breached its duty by failing to fully and adequately investigate Taylor's criminal background. Molalla denied the allegations of negligence and moved for summary judgment on the basis that it had no legal duty to Connes and, in the alternative, that its investigation of Taylor's background was reasonable under the circumstances. The trial court granted Molalla's motion for summary judgment on the ground that Molalla, in light of its policy against a driver's use of public hotel accommodations and the other conditions of employment, had no reason to foresee that Taylor would commit the sexual assault against Connes even if Molalla had known of Taylor's prior criminal behavior.

Connes appealed to the court of appeals claiming that Molalla had a legal duty to members of the public to use reasonable care in hiring its truck drivers and that its duty included conducting an independent investigation of a potential driver's non-vehicular criminal record. In resolving the duty question, the court of appeals weighed such factors as the risk and foreseeability of harm to members of the public from Molalla's failure to investigate Taylor's criminal background, the burden placed on Molalla to guard against such harm, and the practical consequences of placing that burden on Molalla. After weighing these factors, the court of appeals concluded that Molalla had no legal duty to Connes to investigate Taylor's non-vehicular criminal record and, accordingly, upheld the summary judgment. *Connes*, 817 P.2d at 572. We thereafter granted Connes' petition for certiorari to consider

whether the court of appeals correctly determined that Molalla owed no legal duty to Connes to investigate Taylor's non-vehicular criminal background before hiring him as a long-haul driver.[1]

## II.

The elements of a negligence claim consist of the existence of a legal duty by the defendant to the plaintiff, breach of that duty by the defendant, injury to the plaintiff, and a sufficient causal relationship between the defendant's breach and the plaintiff's injuries. *E.g., Casebolt v. Cowan,* 829 P.2d 352, 356 (Colo. 1992); *Observatory Corp. v. Daly,* 780 P.2d 462, 465 (Colo.1989); *Leake v. Cain,* 720 P.2d 152, 155 (Colo.1986). A negligence claim will fail if it is predicated on circumstances for which the law imposes no duty of care upon the defendant. *E.g., Perreira v. State of Colorado,* 768 P.2d 1198, 1208 (Colo.1989); *University of Denver v. Whitlock,* 744 P.2d 54, 56 (Colo. 1987). "A court's conclusion that a duty does or does not exist is 'an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is [or is not] entitled to protection.'" *University of Denver,* 744 P.2d at 57 (quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts,* § 53, at 358 (5th ed. 1984)). The initial question in any negligence action, therefore, is whether the defendant owed a legal duty to protect the plaintiff against injury. The issue of legal duty is a question of law to be determined by the court. *E.g., Casebolt,* 829 P.2d at 356; *Smith v. City and County of Denver,* 726 P.2d 1125, 1127 (Colo.1986); *Metropolitan Gas Repair Service, Inc. v. Kulik,* 621 P.2d 313, 317 (Colo.1980).

A duty of reasonable care arises when there is a foreseeable risk of injury to others from a defendant's failure to take protective action to prevent the injury. *E.g., Palmer v. A.H. Robins Co., Inc.,* 684 P.2d 187, 209 (Colo.1984). While foreseeability is a prime factor in the duty calculus, a court also must weigh other factors, including the social utility of the defendant's conduct, the magnitude of the burden of guarding against the harm caused to the plaintiff, the practical consequences of placing such a burden on the defendant, and any additional elements disclosed by the particular circumstances of the case. *E.g., Observatory Corp.,* 780 P.2d at 466; *University of Denver,* 744 P.2d at 57; *Smith,* 726 P.2d at 1127. "No one factor is controlling, and the question of whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards—whether reasonable persons would recognize a duty and agree that it exists." *Taco Bell, Inc. v. Lannon,* 744 P.2d 43, 46 (Colo.1987).

The tort of negligent hiring is based on the principle that a person conducting an activity through employees is subject to liability for harm resulting from negligent conduct "in the employment of improper persons or instrumentalities in work involving risk of harm to others." *Restatement (Second) of Agency* § 213(b) (1958). This principle of liability is not based on the rule of agency but rather on the law of torts. In *Di Cosala v. Kay,* 91 N.J. 159, 450 A.2d 508, 515 (1982), the New Jersey Supreme Court offered the following distinction between the tort of negligent hiring and the agency doctrine of vicarious liability based on the rule of *respondeat superior:*

> Thus, the tort of negligent hiring addresses the risk created by exposing members of the public to a potentially dangerous individual, while the doctrine of *respondeat superior* is based on the

---

**1.** In her complaint filed in the district court, Connes included separate claims predicated on the doctrine of *respondeat superior,* the theory of negligent entrustment, and the theory of negligence *per se* based on an alleged violation of Department of Transportation Regulation 49 CFR § 391.23(a) (1988), which requires a motor carrier in interstate commerce to investigate a driver's employment record during the preceding three years. The court of appeals affirmed the trial court's entry of summary judgment on these claims also. Pursuant to our order granting certiorari, the only issue before us in this proceeding is the propriety of summary judgment on the negligent hiring claim.

theory that the employee is the agent or is acting for the employer. Therefore the scope of employment limitation on liability which is part of the *respondeat superior* doctrine is not implicit in the wrong of negligent hiring.

Accordingly, the negligent hiring theory has been used to impose liability in cases where the employee commits an intentional tort, an action almost invariably outside the scope of employment, against the customer of a particular employer or other member of the public, where the employer either knew or should have known that the employee was violent or aggressive, or that the employee might engage in injurious conduct toward third persons.

Several jurisdictions, in addition to New Jersey, have recognized the tort of negligent hiring, *e.g., Svacek v. Shelley,* 359 P.2d 127 (Alaska 1961); *Kassman v. Busfield Enterprises, Inc.,* 131 Ariz. 163, 639 P.2d 353 (Ariz.App.1981); *Shore v. Town of Stonington,* 187 Conn. 147, 444 A.2d 1379 (1982); *Island City Flying Serv. v. General Elec. Credit Corp.,* 585 So.2d 274 (Fla. 1991); *C.K. Security Systems, Inc. v. Hartford Acc. & Indem. Co.,* 137 Ga.App. 159, 223 S.E.2d 453 (1976); *D.R.R. v. English Enterprises, CATV,* 356 N.W.2d 580 (Iowa App.1984); *Plains Resources, Inc. v. Gable,* 235 Kan. 580, 682 P.2d 653 (1984); *Henley v. Prince George's County,* 305 Md. 320, 503 A.2d 1333 (1986); *Ponticas v. K.M.S. Investments,* 331 N.W.2d 907 (Minn.1983); *Jones v. Toy,* 476 So.2d 30 (Miss.1985); *Gaines v. Monsanto Co.,* 655 S.W.2d 568 (Mo.App.1983); *F & T Co. v. Woods,* 92 N.M. 697, 594 P.2d 745 (1979); *Welsh Mfg. v. Pinkerton's, Inc.,* 474 A.2d 436 (R.I.1984), and we now join those jurisdictions in formally recognizing this cause of action.[2]

 In recognizing the tort of negligent hiring, we emphasize that an employer is not an insurer for violent acts committed by an employee against a third person. On the contrary, liability is predicated on the employer's hiring of a person under circumstances antecedently giving the employer reason to believe that the person, by reason of some attribute of character or prior conduct, would create an undue risk of harm to others in carrying out his or her employment responsibilities. See *Restatement (Second) of Agency* § 213, comment d. The scope of the employer's duty in exercising reasonable care in a hiring decision will depend largely on the anticipated degree of contact which the employee will have with other persons in performing his or her employment duties.

Where the employment calls for minimum contact between the employee and other persons, there may be no reason for an employer to conduct any investigation of the applicant's background beyond obtaining past employment information and personal data during the initial interview. *Garcia v. Duffy,* 492 So.2d 435, 441–42 (Fla.App.1986) (employer had no duty to make independent investigation of job applicant's background where applicant sought position which involved only incidental contact with public in performing duties). Where, however, the duties of the job will bring the employee into frequent contact with members of the public, or will involve close contact with particular individuals as a result of a special relationship between such persons and the employer, some courts have expanded the employer's duty and have required the employer to go beyond the job application form and personal interview and to make an independent inquiry into the applicant's background. *See, e.g., Williams v. Feather Sound, Inc.,* 386 So.2d 1238, 1240 (Fla.App. 1980) (recognizing that where person initially hired for outside maintenance of townhouse, and job duties included only incidental contact with tenants, employer

---

**2.** Although we have not dealt with the tort of *negligent hiring* in our prior decisions, the court of appeals in *Colwell v. Oatman,* 32 Colo.App. 171, 176, 510 P.2d 464, 466 (1973), cited the *Restatement (Second) of Agency* § 213 (1958) for the proposition that "negligence in the selection of a servant is actionable." We drew upon section 213(c) of the *Restatement (Second) of Agency* in *Destefano v. Grabrian,* 763 P.2d 275 (Colo.1988), where we held that a claim for *negligent supervision* will lie where the employer knows or should have known that an employee's conduct would subject third persons to an unreasonable risk of harm.

has no duty to make independent inquiry concerning employee's background, but duty of making background inquiry was greater where employee was transferred to inside work giving him access to townhouse pass keys); *Ponticas*, 331 N.W.2d at 913 (acknowledging that only slight care may suffice "in the hiring of a yard man, a worker on a production line, or other types of employment where the employee would not constitute a high risk of injury to third persons," but duty to conduct adequate background investigation existed where apartment complex owner hired an apartment manager who has contacts with tenants and access to their apartments); *cf. C.K. Security Systems, Inc.*, 223 S.E.2d at 455 (where employee hired as uniformed security guard to patrol premises of hotel, employer had duty to ascertain whether employee was honest and not likely to commit theft); *Welsh Mfg.*, 474 A.2d at 440 (employer's duty in hiring potential security guard for manufacturing facility which had sizeable quantities of gold on premises included obligation to conduct reasonable investigation into applicant's work experience, background, character, and qualifications to determine whether applicant posed a risk of stealing property from the facility).

The fact that an employer may have a duty in the aforementioned circumstances to make some independent investigation into a job applicant's background as part of the hiring decision, however, is not to say that the duty necessarily extends to searching out and reviewing official records of a job applicant's criminal history. In considering the question of an employer's duty in hiring a person for a position requiring frequent contact with the public or involving close contact with particular persons standing in a special relationship to the employer, two courts have rejected the claim that as a matter of law the employer is required to conduct an independent investigation into the job applicant's criminal history. *See, e.g., Evans v. Morsell*, 284 Md. 160, 395 A.2d 480, 484 (1978) (tavern owner had no duty to investigate criminal record of person hired as bartender where owner received favorable recommendations from bartender's former employer, local police records were not available to owner but were available to prospective employee, and owner knew bartender before hiring him and had no reason to believe that he was potentially dangerous; court notes that duty to investigate possible criminal background of job applicant would impose significant burden on employers and prospective employees); *Ponticas*, 331 N.W.2d at 913 (holding that employer has duty to conduct reasonable investigation into employee's fitness for job as apartment complex manager, but rejecting claim that duty extends to independent investigation of job applicant's criminal record; court remarks that such a duty would contravene rehabilitative efforts of "individuals, organizations and employees to aid former offenders to re-establish good citizenship, the *sine qua non* of which is gainful and productive employment").

 We endorse the proposition that where an employer hires a person for a job requiring frequent contact with members of the public, or involving close contact with particular persons as a result of a special relationship between such persons and the employer, the employer's duty of reasonable care is not satisfied by a mere review of personal data disclosed by the applicant on a job application form or during a personal interview. However, in the absence of circumstances antecedently giving the employer reason to believe that the job applicant, by reason of some attribute of character or prior conduct, would constitute an undue risk of harm to members of the public with whom the applicant will be in frequent contact or to particular persons standing in a special relationship to the employer and with whom the applicant will have close contact, we decline to impose upon the employer the duty to obtain and review official records of an applicant's criminal history. To impose such a requirement would mean that an employer would be obligated to seek out and evaluate official police and perhaps court records from every jurisdiction in which a job applicant had any significant contact. We have serious doubts whether such a task could be

effectively achieved. Even if it could, there would remain the significant problem of interpreting the records and relating them in a practical way to the job in question.[3] Accordingly, in the absence of circumstances antecedently giving the employer reason to believe that a job applicant, by reason of some attribute of character or prior conduct, would constitute an undue risk of harm to members of the public with whom the applicant will be in frequent contact or to particular persons who stand in a special relationship to the employer and with whom the applicant will be in close contact, the employer's duty of reasonable care does not extend to searching for and reviewing official records of a job applicant's criminal history.

## III.

 In the instant case, we agree with the court of appeals' determination that Molalla had no duty to conduct an independent investigation into Taylor's non-vehicular criminal background before hiring him as a long-haul driver. Molalla had no reason to foresee that its hiring of Taylor under the circumstances of this case would create a risk that Taylor would sexually assault or otherwise endanger a member of the public by engaging in violent conduct. To be sure, Molalla had a duty to use reasonable care in hiring a safe driver who would not create a danger to the public in carrying out the duties of the job. Far from requiring frequent contact with members of the public or involving close contact with persons having a special relationship with the employer, Taylor's duties were restricted to the hauling of freight on interstate highways and, as such, involved only incidental contact with third persons having no special relationship to Molalla or to Taylor. After checking on Taylor's driving record and contacting some of his references, Molalla had no reason to believe that Taylor would not be a safe driver or a

dependable employee. In addition, Molalla specifically instructed its drivers to stay on the interstate highways and, except for an emergency, to stop only in order to service the truck and to eat and to sleep. It further directed its drivers to sleep in the sleeping compartment behind the driver's seat of the truck at rest areas or truck stops located along the interstate highway system. Furthermore, Molalla required Taylor to fill out a job application and to submit to a personal interview. Taylor stated on the application form and at the interview that he had never been convicted of a crime. Nothing in the hiring process gave Molalla reason to foresee that Taylor would pose an unreasonable risk of harm to members of the public with whom he might have incidental contact during the performance of his duties. In addition to the unforeseeability of the risk of harm, other factors weigh in favor of not imposing on Molalla a legal duty to conduct an independent investigation into Taylor's non-vehicular criminal history under the circumstances of this case. Molalla not only is engaged in a legitimate interstate freight-transportation service, but also, as part of its operations, provides a useful service in employing drivers on the basis of their safe driving record and their dependability in delivering their loads and caring for the valuable equipment entrusted to them.

We accordingly hold that Molalla, in hiring Taylor as a long-haul truck driver, had no legal duty to conduct an independent investigation into Taylor's non-vehicular criminal background in order to protect a member of the public, such as Connes, from a sexual assault committed by Taylor in the course of making a long-haul trip over the interstate highway system. The judgment of the court of appeals is affirmed.

LOHR, J., specially concurs.

---

**3.** The employer, for example, would be required to assess the significance of such otherwise ambiguous entries as an arrest without a conviction, an arrest for a felony followed by nonprosecution, an arrest for a serious crime followed by an acquittal or a conviction of a minor

offense, an old conviction for a felony or misdemeanor resulting in a successful period of probation or parole without further recidivism, and other similar notations, many of which might be unrelated or remotely related at best to the duties of the particular job under consideration.

Justice LOHR specially concurring:

Today, the majority holds that Molalla Transport System, Inc. (Molalla) had no duty to investigate the criminal record of an applicant for employment before hiring him as a long-haul truck driver. I specially concur in order to emphasize what I believe to be the narrow scope of the majority opinion. As the majority correctly recognizes, the determination of duty requires a sensitive case-by-case analysis. Maj. op. at 1320. Under the facts of this case, the majority finds it inappropriate to recognize a duty. Maj. op. at 1318. While the majority addresses some potential implications of its decision today, the opinion necessarily is based upon the facts of this case. The majority's conclusion does not foreclose the possibility of recognizing an employer's duty to investigate the criminal records of potential employees in other circumstances.

A brief review of some pertinent facts should illustrate the limited scope of our decision. Molalla employed Terry Lee Taylor as a long-haul driver for its trucking business. His primary duties centered on transporting cargo on interstate highways. According to Molalla policies, long-haul drivers could make only infrequent stops for servicing the vehicle, obtaining food, and sleeping. Drivers were to sleep only in the compartments located behind the driver's seat. Thus, Taylor's employment simply placed him in contact with members of the general public. The victim of Taylor's sexual assault, Grace Connes, worked in a hotel lobby, an area of widespread access.

In considering the appropriateness of recognizing a duty, a court must perform a careful weighing of these facts. The sensitive question of whether a defendant owes a plaintiff a duty to act to avoid injury is a threshold question of law to be determined by the court. *E.g., Casebolt v. Cowan,* 829 P.2d 352, 356 (Colo.1992); *Smith v. City & County of Denver,* 726 P.2d 1125, 1127 (Colo.1986). "A court's conclusion that a duty does or does not exist is 'an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is [or is not] entitled to protection.'" *University of Denver v.*

*Whitlock,* 744 P.2d 54, 57 (Colo.1987) (quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 53, at 358 (5th ed. 1984)). In determining whether a duty should be recognized, a court must consider many factors, "including, for example, the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the actor." *Smith,* 726 P.2d at 1127; *accord, e.g., The Observatory Corp. v. Daly,* 780 P.2d 462, 466 (Colo.1989).

Applying the foregoing factors to the hiring of employees, the risk involved, and the foreseeability and likelihood of injury will vary depending upon the nature of the employment duties and the extent of special access to vulnerable persons or valuable property. Evidence of the ease or difficulty of obtaining criminal records can have relevance to the magnitude of the burden of guarding against harm and the consequences of placing the burden upon the employer. In short, individualized assessment of the circumstances of particular employment is essential in determining the existence and scope of a duty to investigate the criminal records of prospective employees.

We may take instruction from the approach of other jurisdictions in analyzing the extent of an employer's duty to third persons injured by the acts of unsuitable employees. In recognizing a potential duty, other jurisdictions focus on a special relationship between the employer and the injured party or center on a factual scenario where the employer sent the employee to the injured party's residence. *E.g., D.R.R. v. English Enterprises, CATV,* 356 N.W.2d 580, 584 (Iowa App.1984) (in case arising from rape of apartment owner by cable TV installer, if installer's employer furnished master key to installer, a special duty to apartment owner arose and could have been breached by hiring installer without checking his criminal record); *Bennett v. T & F Distributing Co.,* 117 N.J.Super. 439, 285 A.2d 59, 62 (App.Div.1971) (in negligence action brought by victim assaulted in

her home by door-to-door vacuum cleaner salesman, issue of whether vacuum cleaner distributor had a duty to investigate salesman's background, including criminal record, involves important conflicting interests and should be resolved after trial rather than on summary judgment); *see Malorney v. B & L Motor Freight, Inc.*, 146 Ill.App.3d 265, 100 Ill.Dec. 21, 23–24, 496 N.E.2d 1086, 1088–89 (1986) (failure of trucking company to investigate prior criminal record of employee who denied a criminal history on application and proceeded to rape a hitchhiker presented a negligence question for jury's determination); *Estate of Arrington v. Fields*, 578 S.W.2d 173, 179 (Texas Civ.App.1979) (evidence of criminal record of employee admissible in jury trial of action against security guard service based on negligent hiring; evidence was relevant to issue of reasonable care in hiring); *cf. Haddock v. City of New York*, 140 A.D.2d 91, 532 N.Y.S.2d 379, 382 (1988), *aff'd*, 75 N.Y.2d 478, 554 N.Y.S.2d 439, 553 N.E.2d 987 (1990) (finding that "employer must conduct a reasonable inquiry in evaluating an employee's past criminal record and may not negligently assign a former convict with a violent history to an unsupervised sensitive position where there is a foreseeable danger to others" in case where park employee with history of rape convictions assaulted a young girl); *J. v. Victory Tabernacle Baptist Church*, 236 Va. 206, 372 S.E.2d 391, 392 (1988) (in negligent hiring action arising out of sexual assault against ten-year-old girl by church employee, allegation that church knew or should have known of employee's prior conviction for sexual assault adequate to prevent dismissal on demurrer). In these cases, the employment relationship is instrumental to the employee's ability to reach the victim.

Notably, in the present case no special relationship existed between the employer and the injured party. In reference to Molalla, Connes was a member of the general public. In addition, she was working in an area of widespread access. Taylor's occupation as a long-haul driver did not provide him with particular access to her. Thus, the situation does not present the question of an employer's duty where the employer maintains a special relationship with the victim, or the employment relationship is instrumental to the employee's ability to reach the victim.

We may take guidance from the factors articulated by the Rhode Island Supreme Court in considering the extent of an employer's investigatory duty in a negligent hiring case. In examining an employer's decision to hire a security guard, the court observed:

> The sensitive nature of the employment, coupled with the opportunity and temptations incident to it, would lead to the conclusion that a prudent employer in these circumstances should rely on more than the absence of specific evidence or statements that a potential employee is dishonest or criminally inclined.

*Welsh Mfg., Div. of Textron, Inc. v. Pinkerton's, Inc.*, 474 A.2d 436, 441 (R.I.1984). As the majority acknowledges, in appropriate circumstances an employer may have a duty to investigate the criminal records of a potential employee. Maj. op. at 1322. The majority concludes that where circumstances give the employer reason to believe that the job applicant, by reason of some attribute of character or prior conduct, would constitute an undue risk of harm to members of the public, an investigative duty may arise. *Id.* I write to emphasize that the appropriate circumstances for the recognition of a duty may encompass additional situations. For example, where the employment relationship provides an employee with special access to vulnerable individuals, the factors relevant to the recognition of duty might dictate a result different from that reached in the present case. Notably, public policy may well favor such a duty. By law, child care centers must conduct criminal background checks of their employees. 12 C.C.R. § 7.701.36 (1989). This reflects a recognition of the sensitive nature of child care and the vulnerability of the children involved.[1]

---

**1.** In addition, the regulatory scheme suggests the feasibility of conducting a criminal background investigation.

**1326**

While it is true that a criminal who pays his debt to society may deserve a second chance, we must not forget the employer's ability to protect innocent third parties from foreseeable harm. In *Bennett*, the court recognized the important policy considerations contending in these cases. On the one hand, the innocent victim lacks the ability to control the employee while the employer possesses the power of selection. 285 A.2d at 62. On the other hand, there are countervailing policies favoring the employment of rehabilitated ex-convicts. Because the duty recognition issue is so fact-dependent, a full development of the relevant facts is necessary in order to determine whether an employer has a duty to investigate the criminal record of an applicant for employment. *See id.*

For the foregoing reasons, I specially concur.